## J. H. HOHENSTREET et al. v. AUGUST SEGEL-HORST, Appellant.

Division Two, December 20, 1920.

1. **CONVEYANCE: Testamentary Character.** If the terms of a deed show that the intention of the grantor was to pass a present irrevocable interest in the property to the grantee, it is not testamentary in character.

2. ———: ———: **Effective Upon Grantor's Death.** A deed reciting that "this deed shall not take effect until after the death of the parties of the first part" and that "it is further agreed by said parties that this deed and writing shall be placed in the Recorder's office at Union, Missouri, for safe-keeping till after the death of the said parties of the first part" is testamentary in character and void.

3. ———: ———: ———: **Direction for Safe-keeping.** Words in a deed designating the place where it was to be kept during the grantor's life add force to its other words that it "shall not take effect until after the death" of the grantor. They indicate that a present interest in the land was not intended to be conveyed.

4. ———: **Non-delivery: Recording: Fraud.** Where the deed said that "this deed and writing shall be placed in the Recorder's office at Union, Missouri, for safe-keeping till after the death of the parties of the first part," the unauthorized filing of it for record constituted no delivery, but a fraud upon the grantors.

5. ———: **Mental Incapacity.** Where the testimony as to the grantor's mental status was contradictory, but it is certain therefrom that he was for years subject to numerous absurd delusions entertained only by a weak mind, that he was completely under the domination of the grantee and that he transferred all his property without other consideration than the grantee's promise, the finding of the trial chancellor, who saw and heard the witnesses, that the grantor was mentally incapable of making the transfer, will not be disturbed on appeal.

Appeal from Franklin Circuit Court.—*Hon. R. A. Breuer*, Judge.

AFFIRMED.

*Jesse H. Schaper*, and *Jesse M. Owen* for appellant.

(1) There was no substantial evidence in the case to support the verdict and finding of the trial court on the first count of the petition. (a) The deed executed by Hohenstreet and his wife, to defendant, on March 16, 1905, and read in evidence in this case, is a valid instrument, treated either as an executory contract, in which the grantors contracted to give their property for their future care and maintenance and the grantee contracted to give such care and maintenance, in exchange for the property. 8 Ruling Case Law, p. 934, par. 12; Dreisbach v. Serfass, 126 Pa. St. 32; 3 L. R. A. 836. Or as an executed conveyance, vesting the title in the grantee, possession having been delivered under the contract and deed, and there being no evidence of intent on the part of the grantors to retain any title. 8 Ruling Case Law, p. 934, par. 12; Bortz v. Bortz, 48 Pa. St. 383, 86 Am. Dec. 603. (b) The deed executed by Hohenstreet and wife to defendant, on March 16, 1905, and delivered by the grantors to the Recorder of Deeds, and by him

delivered to the grantee, constituted a good delivery, though the grantors were dead at the date of the last delivery, for the delivery took effect by relation as of the date when first made to the Recorder. Sneathen v. Sneathen, 104 Mo. 209; White v. Pollock, 117 Mo. 467; Chambers v. Chambers, 227 Mo. 262. (c) Hohenstreet and his wife, by both act and word, parted with their dominion over this deed, with the intention to make it operative and effective upon its execution and delivery; defendant also by word and act accepted the deed. This amounted to a consummation of the delivery of the deed. Chambers v. Chambers, 227 Mo. 262. (d) Moreover, the act of Hohenstreet, in causing this deed to be promptly recorded in the office of the Recorder, in accordance with the registry laws of the State, was a solemn proclamation to the world that there has been a transfer of title from Hohenstreet and wife to defendant. Perry v. Price, 1 Mo. 555; Burke v. Adams, 80 Mo. 512. (e) The parties to the deed themselves, by their acts and conduct, in the performance of their agreements, under the deed in question, in dealing with each other, and with the property conveyed by the deed, placed their own construction upon the terms of the deed, covering a period of twelve years, by which they recognized that the deed was operative and effective upon its execution and delivery. (f) The deed from Hohenstreet and wife to defendant in suit was not testamentary in character, first, because upon its execution the grantors delivered the full possession, the use and control of the property to the grantee, and the latter entered into the possession, and thereafter remained in the full possession and control of the same, raising crops, making improvements, paying taxes thereon and claiming the title thereto, under said deed, for the period of twelve years, or more, up to the time of the trial of this case. To be testamentary in character, the disposition must be intended and made to take effect after the death of the grantors so that the possession, use and control of the property remains in and is re-

served to the grantors during their lives. Second, because the deed is a conveyance, for the support and maintenance of the grantors, to be furnished for the remainder of their lives, instead of the money to be paid therefor, by the grantee; in other words, the stipulation in the deed for the support of the grantors is merely the recital of the consideration. Wing v. Havelik, 253 Mo. 502. (g) As against the plaintiffs, the sole heirs of the grantor, the question of consideration is immaterial. (2) There was no substantial evidence, introduced at the trial to support the verdict and finding of the trial court on the second count of the petition. The deed of March 2, 1917, executed by Hohenstreet to defendant, is a valid instrument. (a) As against the plaintiffs, the sole heirs at law of the grantor, the question of consideration is immaterial. Bob v. Bob, 89 Mo. 411; Weiss v. Heitkamp, 127 Mo. 23; Chambers v. Chambers, 227 Mo. 287; 8 R. C. L. p. 961, par. 35. (b) Nor is the finding of the trial court that the execution of the deed of March 2, 1917, by Hohenstreet to defendant "was procured by the fraud, covin and undue influence of defendant exercised over the mind of said deceased at said time," supported by substantial evidence in the record. Give to the facts, circumstances and conditions stated their fullest force and significance, they do not raise even a suspicion of fraud or undue influence; much less do they afford a basis of reasonable and fair inference thereof. Brinkmann v. Rueggesick, 71 Mo. 566; Berberet v. Berberet, 131 Mo. 410; Doherty v. Gilmore, 136 Mo. 419; McFadin v. Catron, 134 Mo. 219; Lee v. Lee, 258 Mo. 599. (c) In a suit to cancel a deed, admitted to be a suit in equity, the finding of the chancellor is not, like a verdict of a jury in a law case, binding on the appellate court. Chambers v. Chambers, 227 Mo. 262.

*James Booth* and *Wm. L. Cole* for respondents.

(1) The first deed was adjudged to be void because it was testamentary in character, without sufficient con-

sideration, and was obtained by the fraud and undue influence of defendant. The grounds upon which both deeds were set aside were identical except that as to the second deed there was no question raised as to its being testamentary in character. (2) That the first deed was testamentary in character and void because it was an abortive attempt to make a will is well settled in the law. Goodale v. Evans, 263 Mo. 219; Murphy v. Gabbert, 166 Mo. 596; Griffin v. McIntosh, 176 Mo. 392. The first deed provided by its terms that it was not to take effect until after the death of the grantors. With this limitation in the deed, its being placed of record, or even its absolute and unconditional delivery to the grantee, would constitute no waiver of the express terms of the deed by the grantor. (a) Care must be exercised in determining the sufficiency of the evidence in this case not to fall into the error of appellant and confound it with that class of cases involving the right of one to make preference among his own children or other kindred. (b) In this case appellant was a stranger in blood to the deceased. Deceased was of unquestioned weak mind and mentality. He had no opportunity to seek or receive independent advice. The value of the two farms was seven thousand dollars, and the inadequacy of the consideration is apparent. Under these circumstances the law presumes that the first deed was obtained by fraud and undue influence. Martin v. Baker, 135 Mo. 495; Dingman v. Romine, 141 Mo. 466; Jones v. Belshe, 238 Mo. 524. (3) At the time the second deed was made the deceased was 93 years of age, destitute of intellect, living in the home of appellant, nursed, supported, cared for and maintained by appellant and members of his family. There was no consideration for the making of the deed, and under the circumstances it is presumed to have been obtained by the fraud and undue influence of appellant. Mowrey v. Norman, 223 Mo. 463; Martin v. Baker, 135 Mo. 495; Dingman v. Romine, 141 Mo. 466; Jones v. Belshe, 238 Mo. 524. (4) There was

no issue of ten years' adverse possession by defendant in this case. He took under a deed giving him no right until after the death of the grantor, which occurred just a few weeks before the commencement of this suit. He is bound by the terms of the deed under which he would claim.

WALKER, J.—This is a suit to set aside two deeds to different tracts of land in Franklin County. The first deed is from Herman H. Hohenstreet and wife to August Segelhorst, the defendant. It was executed March 16, 1905, and purported, for a consideration of $100, to convey 160 acres therein described and all of the personal property of the grantor. The second deed is to Segelhorst from Hohenstreet, then a widower, his wife having died in the meantime. This deed was executed March 2, 1917, and purported to convey 120 acres therein described. There was a judgment below for plaintiffs, from which defendant has appealed. The portions of these deeds varying from the conventional forms of conveyances and necessary to an understanding and determination of the matters at issue, will appear in the abstract of the pleadings or the statement of the facts following.

The petition was in two counts. After a general allegation as to the ownership in fee by Hohenstreet of the land described in each count and that he died intestate and that the plaintiffs are his sole heirs at law, the first count alleges the invalidity of the deed of March 16, 1905, in that it is testamentary in character and is not so framed and executed as to effect a conveyance of real estate, in that it provides that for the care to be given the grantor and his wife during their lives and the payment of their burial expenses, but is not to take effect until after the death of the grantors; that it is to be placed in the Recorder's office at Union for safe-keeping until after the death of the grantors; that it was never delivered to the grantee and that he, without

Hohenstreet v. Segelhorst.

the knowledge and consent of the grantors, caused it to be filed and recorded; that it was executed without consideration and was procured from the grantors by the grantee through fraud, covin and undue influence exercised by the latter upon the minds of the former; that during the years that have elapsed since the making of said deed the grantee has been collecting the rents and profits from said lands, amounting to many hundreds of dollars, and has converted the same to his own use, without in any manner accounting for same. The usual prayer follows that the deed be set aside and declared void, that defendant grantee be required to account for the rents, and for costs.

The second count alleges that at the time of the execution of the deed of March 2, 1917, to Segelhorst by Hohenstreet, who was then a widower, his wife having died after the execution of the first deed, the grantor did not have sufficient mental capacity to make a deed; that same was obtained from him through fraud and undue influence exercised over his mind by the grantee; that the grantor was at the time an old and infirm man, in his dotage and without sufficient mind to make and execute a deed and was then under the influence, control and domination of the grantee; that there was no adequate consideration for same, and that it was without consideration and void; that for several years the grantee has collected and converted to his own use the rents and profits from said land, amounting to hundreds of dollars, and has cut and caused to be cut from said land a large amount of valuable timber, without accounting to anyone therefor. It is prayed that said deed be, set aside and for naught held, and that the grantee be required to account for the rents and profits and for the timber taken from the land, for costs and for other and proper relief.

The answer admits the execution of the deeds and avers their validity. Adverse, continuous, etc., possession of the lands described in each of the counts of the

285 Mo.—33

petition for more than ten years next before the commencement of this action and the consequent bar of the Statute of Limitations is pleaded, as well as the agreement for support of the grantor by the grantee as a consideration for the transfer.

Affirmative relief is asked in the answer to each count in the correction of errors in the description of the land in each deed and that the phraseology of the first deed, that "this deed and writing shall not take any effect until after the death of the said parties of the first part" be changed so as to read as follows: "And this deed and writing shall not be fully performed on the part of said party of the second part until after the death of the said parties of the first part." That the changes in descriptions of the land and the conditions under which the grantee was to take the property, as defined in the first deed, are alleged to be necessary to correctly present the true purpose and intention of the parties, and that the failure of the deeds so to do was through a mutual mistake of fact. The grantee alleges that he has fully performed his part of the agreement, asks a reformation of the deeds in the manner pleaded, and for other and further relief. The reply is a general denial.

The court found that Hohenstreet died intestate in Franklin County, March 23, 1917, leaving as his sole heirs at law the plaintiffs herein. That on March 16, 1905, Hohenstreet and his wife were seized in fee as tenants by the entirety of the land described in the first deed, and that Hohenstreet was seized in fee of the land described in the second deed; that about twelve years ago the wife departed this life. After reciting the agreement pleaded by the grantee, the court further found that the first deed was testamentary in character, and that at the time it was made the grantor was an old man easily influenced and of weak mind and that the grantee at all times enjoyed, possessed, used and exercised domination and control over his mind and will;

that there was no consideration for the first deed, and that the purported consideration of $100 was wholly false, and that the grantor made said deed by and through the covin, fraud and undue influence of the grantee exercised over the mind of the grantor at the time; that the grantee has not been in the open, notorious and adverse possession of the land for ten years next before the commencement of this action. That the rents and profits of said land received by the grantee are equal to or greater than the value of the services mentioned in the answer as having been rendered by the grantee to the grantor. Wherefore the deed is adjudged and decreed to be void and is set aside and for naught held.

As to the second cause of action, the court found that Hohenstreet was the owner in fee of the land described in the deed made by him to Segelhorst on March 2, 1917; that at the time of said conveyance and for many years prior thereto, the grantor was an old man, infirm, weak of mind and mentally incapable, and was under the care and custody of the grantee, who during all of said time was the trusted agent and advisor of the grantor in and concerning his business affairs, and at all times looked after or pretended to look after and guard the business interests of the grantor; that the latter was easily influenced and subject to the domination and control of the grantee; that the grantor received no consideration for the making of the deed, and that the consideration of $100 expressed therein was false and untrue; that the execution of the deed was procured by fraud, covin and undue influence of the grantee exercised and executed over the mind of the grantor at the time; that the grantee has not been in the adverse, open, etc., possession of said land for more then ten years next before the commencement of this action, and that the grantor never had any agreement concerning said land except as herein stated; that the rents and profits received by the grantee from the land and the value of the timber removed by him from same

are equal to or greater than the sum of all taxes paid by the grantee on said land and the reasonable value of any services that might have been rendered by him to the grantor. Wherefore it is adjudged and decreed that said deed be and the same is declared null and void and it is set aside and for naught held.

In March, 1905, Henry H. Hohenstreet and his wife, who were elderly people, each aged about 75 years, lived on and were the owners by the entirety of 160 acres of land in Franklin County in the immediate neighborhood of the appellant Segelhorst. This land they conveyed to Segelhorst March 2, 1905, by what is designated here as the first deed. Hohenstreet owned another tract of land of 120 acres, not adjacent to but in the neighborhood of the home tract, which was conveyed to Segelhorst by the second deed, dated March 16, 1917. At the time of the making of each of the deeds Hohenstreet was frail and infirm physically and had been possessed for many years of vagaries and delusions—among others, that his father was or had been the king of Germany; that he himself had fabulous wealth, not only in money, but in precious metals and landed possessions; that the governments of Germany and the United States were indebted to him in the amount of millions of dollars; that his neighbors ruined his timber by bewitching his trees; that if a tree on his land was felled it would explode and kill those nearby; that the taxes he was required to pay on his land was robbery; that he dug holes on his land and called the yellow clay which he unearthed gold, of which he claimed to have an abundance; that he had lived in Arkansas and witnessed an earthquake there, throwing up rocks pretty near as big as a house, that came down and just missed him; that iron Bibles were used in Arkansas; that there were ghosts in the air, because his mule pointed his ear skyward; and other statements of the same character, shown, as frankly stated by counsel for appellant, to be without any foundation in fact. These are but types

of the delusions stated by witnesses for the plaintiffs to have been entertained by the grantor before the execution of the deeds. In addition, it is shown by the testimony of plaintiff's witnesses that Hohenstreet for a number of years before his death, including the period when the deeds were made, transacted little or no business requiring the exercise of discretion or judgment. That his wife died in 1905, and for a number of years before her death she paid their bills, directed the rental of their land and collected the amounts due them.

Witnesses for the defendant testified that during the years above mentioned Hohenstreet conducted himself in a normal manner, transacted the limited business devolving on one in his situation in life, and assented with seeming understanding to the making of the deeds to Segelhorst. In short, that Hohenstreet was sane at the time of the execution of each of the deeds and that "he talked all right and there was nothing the matter with him."

Soon after the execution of the first deed, Segelhorst took possession of all of the personal property of Hohenstreet, consisting of a few head of live stock and some farm machinery not exceeding in value the sum of $250, and converted same to his own use. He also took possession of the two tracts of land, the one described in the first deed and the other to which the deed was not made until 1917, and used and occupied both continuously up to the time of the commencement of this action. He either cultivated or rented the land and appropriated the proceeds arising therefrom to his own use. Timber for firewood and the making of railroad ties was cut by him on the 120-acre tract and either used or sold, the proceeds being converted to his own use. He paid the taxes on the land during the years succeeding the making of the deeds. His complete domination over the affairs of Hohenstreet and his conversion of the latter's property under the assumed authority of the first deed, is illustrated, among other in-

stances, by his collection of a note to Hohenstreet for $200 and the appropriation of the proceeds to his own use. No evidence was offered to show that Hohenstreet had any knowledge of this transaction. Another illustration of like effect is found in the testimony of one of the plaintiff's witnesses, a nephew of Hohenstreet, who testified that his uncle's relatives were not permitted to visit him after his removal to Segelhorst's; that witness went to see his uncle several times but that "he was guarded like a hawk; they would watch him and nobody could talk to him."

Another one of plaintiff's witnesses, also a nephew of Hohenstreet, testified that he called on his uncle and when he went to shake hands with him the latter eyed him curiously and ran away yelling, "Go! I know you; they told me all about you. Get!"

Proof of the incorrect phraseology of the first deed pleaded in the answer, was not attempted to be made, nor was it shown that the descriptions of the land in either deed were erroneous.

After the death of Hohenstreet's wife in July, 1905, he continued to reside on the home tract until 1914, when he was taken by Segelhorst to the latter's home, where he died at the age of 87 years, March 23, 1917, about three weeks after the execution of the second deed. By the terms of the first deed it was to be deposited in the Recorder's office at Union for safe-keeping till after the death of the grantors. Instead of this being done we find that it was filed for record and recorded March 25, 1905, or a little more than a week after its execution, and then left in the manual possession of the Recorder until after Hohenstreet's death, when its delivery was demanded by Segelhorst and complied with by the Recorder, who says "he wanted to get rid of it."

There was no evidence that Hohenstreet had any knowledge of this transaction concerning the filing and recording of the deed or that he knew what became of it after its execution. The only definite evidence on this

subject is that after the deed had been signed and ac-knowledged it was left lying on the table where Hohen-street was sitting. Its authorized disposal was that it be placed in the Recorder's office for safe-keeping. This was not done.

The character of the first deed; the mental status of the grantor not only as to his capacity to make the deeds but as subjecting him to undue influence in the making of same; and the propriety of the application of the bar of the Statute of Limitations as affecting plaintiff's right of action, are matters demanding consideration.

I. The seeming contrariety of opinion in the adjudicated cases as to what will render a deed testamentary in character, may be removed or shown not to exist by the application of the well established test that if the terms of the deed show that the intent of the grantor was to pass a present irrevocable interest in the property to the grantee, then the conveyance is not testamentary.

**Testamentary Character of First Deed.**

a. Properly included in this class of cases is that of Christ v. Kuehne, 172 Mo. 118, in which the condition expressing the intent of the grantor operated only upon the present enjoyment of the premises conveyed, and not upon the title, the transfer of which was by its terms unequivocal and hence gave validity to the deed.

Similar in import and of like effect in meaning are the conditions in the deed in Dozier v. Toalson, 180 Mo. 546, in which a mother conveyed a vested remainder in fee to her daughter, reserving only the uses, rents and profits during her life.

In Wimpey v. Ledford, 177 S. W. (Mo.) 302, the limitation in the deed was that the grantors should have all-controlling power of the premises during their lifetime and at their death the title was to pass to the grantees. It was held, in view of the other unequivocal terms of the deed expressing a purpose to transfer a present interest in the property conveyed, that the word

"title" was not used in a technical sense, but as synonymous with ownership or the right of possession, and hence the deed was not testamentary. In the Wimpey case are reviewed and distinguished with some degree of care numerous cases on this subject.

In Priest v. McFarland, 262 Mo. 229, the deed expressly reserved a life estate in the grantor, and at the same time, by words of present import, conveyed a vested remainder in the property to the grantees. These words were held to effect a present conveyance of a vested title in fee.

In Dawson v. Taylor, 214 S. W. (Mo.) 852, the condition in the deed expressed a clear reservation of a life estate in the grantors, with a remainder over to the grantees upon the death of the former. Aside from this reservation the deed was in the usual form and imported a present conveyance. Under these facts the court held that with a life estate formally reserved the title to the fee could not fully vest in the grantees until the expiration of the precedent estate; and that the deeds there under consideration, which had been delivered to the grantees at the time of their execution, did pass a present interest and were not testamentary.

Other cases of like import are Sims v. Brown, 252 Mo. 58, and Burkey v. Burkey, 175 S. W. 623.

b. Among those cases in which the conditions in the deeds are held to classify them as testamentary is that of Goodale v. Evans, 263 Mo. 219, 214 S. W. 853, in which it was provided in the deed that the grantees were to have and hold the premises from and after the death of the grantor; this court held that these terms deferred the operative effect of the transfer until that event and rendered the deed testamentary and void.

In Terry v. Glover, 235 Mo. 544, a deed reciting that it was not to go into effect until after the death of the grantor, even though it had been delivered, was testamentary in character, and not having been executed as required by law for a will, was invalid.

In Givens v. Ott, 222 Mo. 395, the deed contained this language: "to have and to hold the same unto said second party, their successors and assigns forever; this conveyance not to take effect until our death and that of the survivor of us." This we held did not pass a present interest, but was to become operative alone upon the grantor's death and was hence testamentary in character and insufficient to pass the title.

To a like effect are Griffin v. McIntosh, 176 Mo. 392; Murphy v. Gabbert, 166 Mo. 596 and cases p. 601; Miller v. Holt, 68 Mo. 584.

Mindful of these distinctions, we come to a consideration of the words in the first deed at bar defining its operative effect. They are as follows: "And this deed and writing shall not take eney efect untill after the death of the said parties of the first parties. And it is fother agreed by said parties that deed and writing be placed in Recorder's office at Union, Missouri, for safe keeping till after the death of the said parties of the first parties."

Although lame in orthography, these words are not lacking in clearness. Not only do they definitely declare when the deed is to take effect, but they define the manner of its physical disposal in the meantime. This direction as to disposition, correctly construed, adds force, if it were necessary, to the intent of the grantors that the deed should not take effect until after their death. If it were otherwise intended, why provide for the formality of the deed being safely kept until that time by the Recorder? If a present interest in the land had been intended to be conveyed, either the deed would have been silent in regard to its disposition after its execution and a delivery to the grantees would have followed, as is usual in ordinary cases, or an express provision would have been made in the deed as to its delivery. It seems clear, therefore, that no other reasonable conclusion can be reached than that the deed means simply what it says; and, not being intended to be delivered

until the death of the grantors, it conveyed no present interest. Thus construed, its character must be held to be testamentary, but as it lacks the formal legal requisites necessary to make it a will, it is ineffectual for that purpose and hence void.

This conclusion renders it unnecessary to discuss the non-delivery of the deed and the unauthorized filing of the same for record, which constituted no delivery and was a fraud upon the grantor. [Berkmeir v. Peters, 111 Mo. App. 717; Miller v. McCaleb, 208 Mo. 562; Terry v. Glover, 235 Mo. 544.]

Nor need we consider the mental status of the grantor so far as it may affect the ruling of the court upon the first deed. If it was not a deed, as we have held, it was not necessary to discuss the mental capacity of the grantor in the making of same.

II. The contradictory testimony of the witnesses of the respective parties as to the mental status of the grantor renders it difficult, even after a painstaking review of the testimony, to reach a satisfactory conclusion concerning same. Of this much, however, we are well satisfied, that for years the grantor was subject to numerous absurd delusions entertained only by a weak mind; that he manifested this condition not only in the transaction of the ordinary affairs of every day life but in the transfer of all of his property to the grantee without other consideration than the latter's promise. That this may have been complied with may be admitted, but it does not alter the conclusion deducible from all the facts, that one moved by a proper regard for the grantor's condition and influenced by no personal motive would not have been a party to the transaction in which the grantee secured the second deed. It is not improbable that the grantor may have known so far as he was capable of knowing, that he was making the transfer, but he was, as the facts warrant, under the domination and subject to the will of the grantee. Thus environed, he

*Mental Incapacity.*

had no opportunity, if he had sufficient mind to desire it, to consult with others concerning the disposition of his property. A notary public and two ignorant neighbors called in by the grantee to give what he regarded as a legal formality to the deed, were the only persons present when it was executed. That evidence of this transaction shows that the grantor willingly made the deed need not be questioned; but his action, measured as it must be by the testimony of the grantee's witnesses, shows nothing more than an acquiescence and not that intelligent participation in the transaction characteristic of one who acts on his own volition. In other words, it appears that he simply did what he was told to do. In thus acting, in view of all the other facts, he was either dominated by the grantee or, if a willing participant in the transfer, was so infirm physically and mentally as to be unable to comprehend the nature of his act. Reliance upon the cold letter of the record does not constitute the sole support for this conclusion. The chancellor, who doubtless knew the parties and witnesses to this transaction, or if he did not, heard them testify and in so doing observed their manner and was thereby enabled in a most satisfactory way to weigh their credibility, found that there was ample evidence that the grantor at the time of the making of this deed was not only incapable mentally of making this transfer but that he was at the time under the domination of the grantee. This we regard as strongly persuasive and we find no reason for a different conclusion. We therefore hold the second deed to be void.

III. Little need be said in regard to the bar of the Statute of Limitations as applied to either cause of action. Urged in the motion for a new trial, it was not referred to in appellant's brief and may

**Limitations.** be considered abandoned. [Shaw v. Goldman, 183 Mo. 461; Redmond v. Railroad, 225 Mo. 721; Buttron v. Bridell, 228 Mo. 622.]

The rents received and money collected, either from the sale of timber or the payment to the grantee of the note due the grantor, as well as the value of the personal property converted by the grantee, are ample to compensate him for any care given to or expense incurred by him for the grantor.

Finding no error justifying a reversal, and satisfied that the findings of the court below and its decree rendered thereon are in accord with equity and good conscience, we affirm the judgment. All concur.