JAMES H. WAHL, LEWIS F. WAHL and ELLA WAHL PATTERSON v. ANNA VASHTI WAHL, Individually and as Joint Executor of the Last Will and Testament of JAMES S. WAHL, Deceased, Appellant, and SHARON J. PATE, Individually and as Joint Executor of the Last Will and Testament of JAMES S. WAHL, Deceased; CHAFFEE ICE AND COLD STORAGE COMPANY, a Corporation; and WAHL & COMPANY, a Corporation, Non-Appealing Defendants. —No. 40378.—206 S. W. (2d) 334.

Division Two, December 8, 1947.

90

*M. E Montgomery* and *Blanton & Blanton* for appellant.

92

*Maddox & Maddox, Stephen Barton* and *Jack Manhein* for respondents.

[335] TIPTON, J.—This is a declaratory judgment action to determine the right, title and interest of respondents (plaintiffs) in certain shares of stock in the Chaffee Ice and Cold Storage Company of Chaffee, Missouri, and Wahl & Company of Hayti, Missouri. The appellant, Anna Vashti Wahl, and defendant Sharon J. Pate were joint executrix and executor of the estate of James S. Wahl, deceased. Plaintiffs' contention was that this stock was given to them by the deceased and that they were the owners of the stock in dispute. Defendant Sharon J. Pate, as an individual and as co-executor of the estate of the deceased, filed a separate answer and agreed with the plaintiffs. Defendant Chaffee Ice and Cold Storage Company and defendant Wahl & Company filed joint separate answers in which they stated that they had no interest in the stock; that they did not know whether the stock belonged to plaintiffs or to the estate of James S. Wahl, deceased; and that they would obey the orders and judgment of the court with reference to the ownership of the shares of stock. Defendant Anna Vashti Wahl, as an individual and as executrix, filed an answer contending that the stock belonged to the estate of James S. Wahl. In her answer she admitted that there was an attempted transfer of the stock in question but declared it was void because it was without consideration and there was no delivery thereof; that the attempted conveyance was testamentary in character; and, further, that it was an unlawful scheme to deprive her of her just dower and widow's rights in the stock. The trial court found that the transfer of the stock vested in James S. Wahl a life estate and remainder over, immediately and unconditionally in and to the various stock certificates in the plaintiffs, and decreed that the plaintiffs were owners of the stock.

From that judgment and decree the defendant Anna Vashti Wahl took an appeal to the Springfield Court of Appeals but that court transferred the case to this court because it involved more than $7,500.00.

The issues in this case were tried mainly on stipulations. The trial court filed its opinion in this case and we think it has made an accurate statement of the facts. We will adopt this statement without quotation marks.

James S. Wahl was 75 years old at the time of his death and a resident of Caruthersville, Missouri, where he had been in business

for many years. He was married in 1929 to Anna Vashti Wahl, who was his second wife, and, as defendant herein, claims an interest in the stock in question individually as the widow having elected to take under the law one-half of the estate as there were no children of the marriage and as co-executor of the estate:

Plaintiffs James H. Wahl, Lewis F. Wahl and Ella Wahl Patterson were nephews and niece of the said deceased James S. Wahl. Defendants Sharon J. Pate and Dorothy V. Edwards were the children of a sister of the first wife of James S. Wahl and were raised by James S. Wahl in his home. Mary Shoptaw was for twenty five years the secretary of deceased James S. Wahl. The above plaintiffs James H. Wahl, Lewis F. Wahl and Ella Wahl Patterson were educated by James S. Wahl and were very close to him. He visited with them in his lifetime and up until his death and the Court thinks that he considered them almost his children and, since Sharon J. Pate and Dorothy V. Edwards lived in his home, James S. Wahl probably was as close to them as if they had been his own children.

On December 30th, 1937, James S. Wahl conveyed 210 shares of stock in the Chaffee Ice and Cold Storage Company of Chaffee, Missouri, evidenced by Certificates Nos. 1, 24, 28, 30, 32 and 43 to James M. Reeves and surrendered said certificates of stock to him with the following endorsement thereon, to-wit:—

"For value received I hereby sell, assign and transfer unto James M. Reeves shares of the capital stock represented by the within certificate and do hereby irrevocably constitute and appoint Norman Bugg to transfer the said stock on the books of the within [336] named company with full power of substitution in the premises.
December 30, 1937.                    (Signed) James S. Wahl"
Said certificates of stock were surrendered to the Corporation by James M. Reeves, cancelled and a new certificate No. 49 for 210 shares of stock was issued to said James M. Reeves in lieu of said surrendered stock and, that on the same day, to-wit:—December 30, 1937, the said James M. Reeves endorsed the said Certificate of stock No. 49 as follows:—

"For value received, I hereby sell, assign and transfer to James S. Wahl, James Hubbard Wahl, Ella Wahl Patterson and Lewis F. Wahl, shares of the capital stock, represented by the within certificate, and do hereby irrevocably constitute and appoint Norman Bugg to transfer the said stock on the books of the within named company with full power of substitution in the premises.
December 30, 1937.                    (Signed)   James M. Reeves"
and surrendered the same to said Chaffee Ice and Cold Storage Company and had issued in lieu thereof three certificates Nos. 50, 51 and 52, each for 70 shares of stock. Certificate No. 50 was issued to James S. Wahl during his life and, upon his death, to plaintiff James Hubbard Wahl. Certificate No. 51 was issued to James S. Wahl during

his life and, upon his death, to Ella Wahl Patterson. Certificate No. 52 was issued to James S. Wahl during his life and, upon his death, to Lewis F. Wahl. All of such transfers were shown upon the books of the Corporation, Chaffee Ice and Cold Storage Company and all of such conveyances were made on the same day.

The said James S. Wahl during his lifetime, to-wit:— On February 21st, 1938, conveyed 150 shares of stock in defendant corporation Wahl and Company, which he then owned and which was evidenced by stock certificates Nos. 1, 2, 3, 4, 5 and 6 and each certificate was assigned by the said James S. Wahl as follows:—

"For full value received I hereby sell, assign and transfer unto Ernest Lefler shares of the capital stock represented by the within certificate and do hereby irrevocably constitute and appoint —— —————— to transfer the said stock on the books of the within named corporation with full power of substitution in the premises. February 21, 1938.                              (Signed)   James S. Wahl" and, to shorten this statement of facts the court finds that the same transaction was made as to this stock as shown in the conveyances of the stock of the Chaffee Ice and Cold Storage Company excepting the grantees in said stock were James H. Wahl, 25 shares, Lewis F. Wahl, 25 shares, Ella Wahl Patterson, 25 shares, Sharon J. Pate, 25 shares, Dorothy V. Edwards, 25 shares and Mary Shoptaw, 25 shares, all of such conveyances were made on February 21st, 1938, through Ernest Lefler. The above shares of stock in the Corporation are now in the hands of the plaintiffs and claimants under the conveyances made by said James S. Wahl.

James S. Wahl died testate on February 17, 1940, making defendants Sharon J. Pate and Anna Vashti Wahl, his widow, co-executors of his will. Said will was probated and, according to the appraised value of the property, he provided some $14,000.00 worth of property for his widow and some $18,000.00 worth of property was given to Sharon J. Pate and Dorothy V. Edwards. He made no mention of the stock conveyed as set out above in his will but said stock after the last conveyance was delivered to him and was found in his lock box. The widow, some time after the probating of the will, elected not to take under will and, there being no children of the marriage was entitled to one-half of the estate of the deceased.

There can be no doubt under the various transfers of the stock certificates above mentioned that James S. Wahl intended to have the stock transferred so that he had a life estate in the stock and the remainder in the plaintiffs, Sharon J. Pate, Dorothy V. Edwards and Mary Shoptaw. But appellant contends that the gift of the stock was not valid, first, because the transfer of the stock was not accompanied by a delivery of the stock certificates to the donees.

The crucial question in this case is whether or not there was a delivery to the donees.

[337] "Generally, there is a complete gift of corporate stock where, by the direction of its owner, it has been transferred to the donee on the books of the corporation, and a new certificate issued in the name of the donee, or a certificate is issued in the first instance in the name of the donee, although the certificate so issued is retained by the donor or the corporation, and not delivered to the donee. Thus, where a donor causes a certificate of stock to be issued in the name of the donee, retaining possession thereof himself, but at all times regards the certificate as the property of the donee and his own possession as that of a trustee of the donee, the delivery to himself as trustee of the donee is sufficient to complete the gift. Similarly, a completed gift of corporate stock is made by causing it to be issued in the name of another, although the certificates are not detached from the stock book and are not delivered to the donee, but remain in the custody of the corporation, and the donee is ignorant of the transaction at the time." 24 Am. Jur., Sec. 80, pp. 771-772.

The case of Mize v. Bates County National Bank, 60 Mo. App. 358, decided by the Kansas City Court of Appeals, involved the question of whether bank stock given by a father to his children was a valid gift. M. W. Mize was the owner of two certificates of bank stock for six shares. He surrendered those certificates and had three certificates of stock issued for two shares each in favor of himself as trustee, naming a different one of his three children as beneficiary in each certificate. He held and retained those certificates until his death some two years thereafter without collecting the dividends, but intended to deliver them at some time to the children. That court held that the gifts were complete and that the donor had constituted himself a trustee for the children.

In ruling the case that court said:

"The deceased was the owner of the two certificates of stock standing in his own name. He surrendered them to the bank and directed that the bank reissue separate certificates in even shares, for his three children, to him as trustee for each child named in the respective certificates. . . . And that he kept the certificates in his manual possession can not have the effect to prevent the result which had been accomplished by his unequivocal acts, since such conduct on his part was *not inconsistent with those acts, he being the trustee and therefore the proper custodian.*" Loc. cit. 362-363.

In Jones v. Jones et al., 201 S. W. 557, the facts were as follows: A. G. Jones and others organized a bank. It was agreed that no stockholder should own more than ten shares. A. G. Jones took ten shares in his own name and placed seven more shares on the books of the bank in the name of his son, Elliott H. Jones. These seven cer-

tificates of stock in the name of Elliott H. Jones were kept in the private bank box of A. G. Jones at Hamilton, Missouri. The evidence did not disclose what arrangements, if any, as to this stock existed between A. G. Jones and his son, Elliott H. Jones. In holding that there had been a delivery to Elliott H. Jones, the Kansas City Court of Appeals said: "However, we think there was other evidence strongly tending to show that Dr. Jones delivered this stock to his son. In the first place, the law will raise a presumption of a gift from parent to child from circumstances where it would not be presumed between strangers, . . . ."

"While there is no evidence that Elliott H. Jones did anything to show an acceptance of the stock on his part . . . , nevertheless, it is a rule of law that where a gift is entirely beneficial to the donee, his acceptance of it will ordinarily be presumed, unless the contrary appears." Loc. cit. 558.

In Trautz v. Lemp, 329 Mo. 580, 46 S. W. 2d 135, l. c. 145, we said: "We are not overlooking the fact that he [the donor] could have made a present gift of the stock in remainder, reserving unto himself, during his life, the right to vote and control same, and received the income thereon, but there is no evidence that he attempted to make such a gift." The evidence in that case disclosed that the donor delivered the stock to one of the donees for safe-keeping only and did not part with title.

In the case of In re Franz' Estate, 344 Mo. 510, 127 S. W. 2d 401, we held that where the life tenant had possession of stock, if remainder transferred their interest by gift to [338] the life tenant, it was not necessary to establish gift to show delivery, since the life tenant was entitled to possession.

In the case of Benton v. Smith et al., 171 S. W. 2d 767, the donor's corporate stock was reissued to donor and donee with right of survivorship, with a reservation of dividends in the donor. In ruling the case, the Kansas City Court of Appeals said: "It will be borne in mind that the gift was made in such a manner that the donor and donee were to hold the stock as joint tenants. It is stated that 'the possession of joint tenants is in common and each has a right to the enjoyment of the whole property to the extent of his interest.' 33 C. J., p. 909. Consequently, Mrs. West [the donor] did not give up all her rights in the stock during her lifetime and, under the circumstances, the reservation by her of the dividends on the stock did not invalidate the claimed gift." Loc. cit. 772.

From the above authorities, it follows that James S. Wahl gave the stock to these donees subject to a life estate in him. The transfers of the stock on the books of these two companies consummated an irrevocable gift of the remainder estate in these donees. Their estate was vested, only their enjoyment of it was postponed. Since he held a

life estate in these stocks, he was entitled to possession of the stock certificates. His right to vote the stock and to receive dividends in no way affected the validity of the gift. This is especially true since the evidence shows that he reared and educated the donees and considered them almost as his own children. Under such circumstances the law will presume a delivery to the donees. The acceptance of these gifts will be presumed because they were entirely beneficial to the donees. Jones v. Jones, supra. There is not the slightest evidence that would tend to show that he did not intend to make a gift of the remainder estate to these donees. The fact that this stock was not mentioned in his will executed about three months after the transfer of the stock is a circumstance showing that he intended to exercise no control of the remainder estate.

The appealing defendant contends conveyance of this stock was void as being testamentary in character, and that this fact is shown by the manner in which the certificates were finally issued. For example, certificate number 27 was issued to "James S. Wahl during his life and upon his death to James H. Wahl." The identical wording was used in the other certificates.

This defendant contends that the language used in the new stock certificates is open only to the construction that James S. Wahl "intended and provided for retaining the exclusive ownership and right to this stock in himself for life, and only 'upon his death' were the donee respondents to come into any title or rights whatever." Of course, if her construction is correct, the gift of this stock is void because it is testamentary in character. Thorp v. Daniel, 339 Mo. 763, 99 S. W. 2d 42; Dunn v. German-American Bank, 109 Mo. 90, 18 S. W. 1139. But if the terms of the instrument show that the intent of the donor was to pass an irrevocable interest in the stock to the donees, then the conveyance is not testamentary. Hohenstreet v. Segelhorst, 285 Mo. 507, 227 S. W. 80.

"The law favors vested estates, and, where there is a doubt as to whether the remainder is vested or contingent, the courts will construe it as a vested estate. Collier's Will, 40 Mo. 287. Adverbs of time, as *when, there, after, from,* and like expressions, do not make a contingency, but merely denote the commencement of the enjoyment of the estate. 4 Kent [11 Ed.] 230n; Doe v. Considine, 6 Wall. 458. The expressions that they, Levin Baker and others, are not to take possession of the property devised 'until the death of Jemima Lindell,' and that 'upon her death' the devisees shall take the parts as tenants in common, all relate to the times when the devisees shall have possession, and have nothing to do with the vesting of the estate." Chew v. Keller, 100 Mo. 362, l. c. 368, 13 S. W. 395.

"Such a limitation as is described in Comment h is not precluded from creating an indefeasibly vested remainder by the fact that the

remainder is, in specific words, limited to the properly identified person 'on,' 'upon,' 'at' or 'after' the death of the person having a prior interest for life, or 'when' **[339]** such a person dies. Language of this type indicates the postponement of enjoyment implicit in all indefeasibly vested remainders and injects no additional element of uncertainty.'' Restatement, 2 Property, p. 550, Sec. 157, par. j.

We are convinced that the conveyance of this stock was not testamentary in character, that James S. Wahl had no right to change the interest or in any way to deprive the donees of their legal interest created by the conveyance. At the time of the conveyance the donees had an irrevocable interest in the stock, subject only to the donor's life interest in the stock.

The appealing defendant contends that the transfer of the stock was void as it was an attempt to deprive her of her dower and marital rights in this stock. After a careful examination of this record, we believe that the trial court correctly stated the facts on this point in its opinion filed in this case and we will adopt them. They are as follows, without quotation marks:

James S. Wahl was an active business man, was until his death; that prior to his death he had suffered from a gall bladder trouble and had, on different occasions, gone to a Memphis hospital for treatment but that, at no time, was there any indication that he thought he was going to die and the facts show that just prior to his death he had been attending conventions in St. Louis and talking of plans to enlarge his business interests; the facts further show that he had had some trouble with his wife, fusses, and probably with his wife's sister but that he had taken her on long trips through the east; that when he died he made her co-executor of his will; that he willed her something over $14,000.00 worth of property and I think there is nothing to show that he had any intention at the time of making these conveyances of trying to defraud his wife out of her marital rights. The court further finds that the beneficiaries under the conveyance were the natural objects of his bounty, they were children that he had raised or practically raised and were the ones upon whom he had, through the years, bestowed his affections by spending his money to educate them. In the testimony of the defendant, Anna Vashti Wahl, widow of the deceased, she stated that she expected him to give the plaintiff's James H. Wahl, Lewis F. Wahl and Ella. Wahl Patterson more than he had given them, showing that she was not surprised at the conveyance, at least of the shares of stock in the Chaffee Ice and Cold Storage Company and certainly the making of his widow co-executor of the estate in his will, written shortly after the conveyances of the stock in question, would indicate that he had no malice toward his wife.

The rule in this state is that a widow may avoid voluntary transfers of personal property made by a husband in immediate contemplation of death with the intent to defeat and defraud the widow of her statutory marital rights. Merz v. Tower Grove Bank & Trust Co., 344 Mo. 1150, 130 S. W. 2d 611, and cases cited therein.

There is no evidence in this record to substantiate the fact that the conveyance was made with any intent to defraud the widow of her marital rights. Nor is there the slightest evidence that the transfer of this stock was made in immediate contemplation of death. In fact, the transfer of this stock was made more than two years prior to James S. Wahl's death.

It therefore follows that the judgment of the trial court should be affirmed. It is so ordered. All concur.