Evelyn E. FIRESTONE, formerly known as Evelyn E. Yoffie, Plaintiff-Appellant,

v.

Harry YOFFIE and Edna Yoffie, his wife, Defendants-Respondents.

No. 34527.

Missouri Court of Appeals, St. Louis District, Division Two.

April 17, 1973.

Motion for Rehearing or for Transfer to Supreme Court Denied May 11, 1973.

Application to Transfer Denied June 11, 1973.

Raymond A. Bruntrager, St. Louis, Isadore Scher, Clayton, for plaintiff-appellant.

Ziercher, Tzinberg, Human & Michenfelder, Robert C. Jones, Clayton, for defendants-respondents.

SIMEONE, Judge.

This is an appeal by plaintiff-appellant, Evelyn E. Firestone, from a judgment of the Circuit Court of St. Louis County entered December 10, 1971 in favor of her father and mother, defendants-respondents, Harry and Edna Yoffie. The issue involves the validity of a gift of certain shares of stock in various corporations by Harry Yoffie to his daughter Evelyn. The court decreed that there was no gift of the shares of stock of these corporations to the plaintiff Evelyn or her mother Edna. The trial court held that while the shares were registered in the names of Evelyn and Edna

as joint tenants with right of survivorship, the certificates were never delivered, they had no control or dominion over them, and the alleged donor, Harry Yoffie, did not intend them to have any right, title or interest in any of the shares. Hence, there was no gift. The court ordered the plaintiff Evelyn and her mother Edna to endorse the certificates or execute stock powers and deliver them to the respondent, Harry Yoffie. Plaintiff Evelyn appeals, urging that a gift of the shares was made.

The facts involve an unfortunate family dispute over certain shares of stock. The single issue involved is whether there was a gift of shares of stock when the alleged donor purchased and registered shares in the name of the alleged donee without delivering the particular certificates to said donee.

While other shares of stock were discussed throughout the proceeding, they are not in issue here. The only issue is whether there was a gift of the following shares:

| CERTIFICATE NUMBER | SHARES | COMPANY |
|---|---|---|
| F980054 | 96 | International Business Machines Corp. |
| B113453 | 50 | International Business Machines Corp. |
| AA085201 | 94 | International Business Machines Corp. |
| CC382473 | 277 | International Business Machines Corp. |
| P117247 | 27 | International Business Machines Corp. |
| NA5883710 | 50 | Sears Roebuck & Company |
| P996–419 | 100 | General Motors Corp. |

The evidence on behalf of the plaintiff-appellant, Evelyn E. (Yoffie) Firestone (hereinafter Evelyn) shows that she is the adult daughter of Harry and Edna Yoffie and lived with her parents prior to her marriage to Harold Firestone in February, 1968. Beginning in about 1951 and throughout the years she stated that her father bought corporate securities for her in her maiden name; that she discussed the matter with him and would see the certificates bearing her name when they were delivered to the family home by mail. She also testified that there was no other name on the certificates. The certificates were kept in her father's safe deposit box for "safekeeping." In 1959 Evelyn went to Houston, Texas to work, and at that time her parents requested that she change the ownership of the certificates into the joint names of Evelyn and her mother Edna "in case anything would happen to me." She signed stock powers so that the stock could be put in joint names. In 1961 she returned to St. Louis, and from that time until 1968 she continued to see "stock certificates coming in the mail as before." But these certificates were in joint names and were all kept by Mr. Yoffie in his safe deposit box located at the Mercantile Trust Company in the City of St. Louis. After Evelyn's marriage to Harold she often requested that the certificates be transferred back to her.

Evelyn stated that in conversations with her father his intentions were that he was buying the shares as a gift, and he indicated that the certificates would be "turned over" to her after her marriage "to do with it what we pleased."

During the years 1963–1969 all dividends received on the stocks were reported on the income tax returns of Evelyn only and she paid taxes on these dividends. After her marriage the dividends were placed in her bank. Income tax returns were prepared by the father's accountant, Eugene Moss. Finally, she stated that her parents have refused to return the shares to her.

Plaintiff's elderly father, Harry Yoffie, admitted that "back in the early 1950's" he began a program of buying shares of stock in the name of Evelyn and purchased stocks for Evelyn and his wife as a "joint account, with my own money." He admitted that in 1950 he purchased IBM stock in Evelyn's name and later bought stock in joint names. He testified that he thought when Evelyn was in Texas "we agreed to put it in joint names—whatever she had." He put the stock in his safety deposit box "for her safety." It was his testimony that in buying the stock in Evelyn's name he would some day "give it to her in a trust as she needed help." After 1959 he purchased stock in the joint names of Evelyn and Edna "to protect Evelyn." He admitted that any dividends from stock in the names of Evelyn and her mother were to go on Evelyn's tax return. He stated it was his intention to give the dividends to Evelyn. But at the suggestion of his accountant Mr. Yoffie's tax returns back to 1965 were amended in April, 1969. At the time of the amended tax returns this matter concerning the gift of the shares of stock was in litigation.

Mr. Yoffie testified that when the dividends were received he deposited them in a checking account for Evelyn and Mrs. Yoffie at the Wellston Bank. He said that Evelyn would sign a stock waiver because "they wouldn't take my signature" to sell the stock and reinvest it. A stock dividend ledger was introduced which indicated that during the 1950's the shares of stock were in Evelyn's name, but that in 1958 or 1959 the stocks started coming in the names of Evelyn and her mother.

The evidence indicates that the shares of stock were originally purchased in the name of Evelyn and were later transferred to or bought in the joint names of Evelyn and Mrs. Yoffie. But they were kept in a safe deposit box rented solely by Mr. Yoffie and were physically in his possession and have been in his possession since the date of purchase. The certificates were never delivered to Evelyn or her mother.

Mr. Yoffie insisted that the stock was his but that the dividends were for Evelyn's use.

Mr. Yoffie's accountant, Eugene Moss, testified that for a period of about 13 years, from 1955 to 1968, the dividends were reported on Evelyn's tax returns and the information concerning the dividends was furnished him by Mr. Yoffie. But this changed in 1968. He corroborated the fact of suggesting that amended returns be made for Mr. and Mrs. Yoffie for the years 1966, 1967 and 1968. The tax was paid twice. Mr. Yoffie's stockbroker testified that he had purchased the stock in the joint names of Evelyn and Edna.

In cutting to the essentials of these confused and often contradictory facts and in attempting to summarize them, it is clear, as both parties agree in their statement of facts, that beginning in the early 1950's Mr. Yoffie purchased the shares involved in this litigation from time to time in varying quantities in the name of Evelyn. In the late 1950's the stock already purchased in the name of Evelyn was placed in the joint names of Evelyn and her mother after Evelyn signed stock powers at her father's request. Thereafter from the late 1950's and into the 1960's all stock was purchased in the joint names of Evelyn and her mother. During this period Evelyn received and used the dividends and reported them on her income tax returns. The stock was purchased with Mr. Yoffie's funds, although this was contradicted by Evelyn. Mr. Yoffie kept the certificates in his safe deposit box and never physically delivered them to either Evelyn or Edna. After this litigation began Mr. Yoffie amended his income tax returns and paid the federal tax on these shares.

After a lengthy and prolonged trial before the trial court the court, on December 10, 1971, made findings of fact and conclusions of law. The court found that during plaintiff's majority and prior to her marriage Mr. Yoffie caused the shares of stock to be registered in the names of the

plaintiff and her mother Edna as joint tenants with right of survivorship, and that while said shares were so registered, the certificates were never delivered by Harry Yoffie to either his wife or to Evelyn and possession of them was always in Harry. Neither Evelyn nor Edna ever had control or dominion over any of the certificates and Harry Yoffie did not intend for either or both of them to have any right, title or interest in any of the shares. The court held that no gift was made and, therefore, all shares were at all times the sole property of Harry Yoffie and were under his complete control and dominion. The court further held that at no time from the birth of the plaintiff did Mr. Yoffie make gifts of stock in any company to her or to her and Mrs. Yoffie as joint tenants with right of survivorship (except the ones not disputed) and that any such stocks were at all times the sole property of Mr. Yoffie. The court, therefore, ordered plaintiff and Edna to endorse the certificates or execute stock powers and deliver the same to Mr. Yoffie.

After a motion for new trial was overruled plaintiff appealed. She contends on this appeal that the court erred in its findings of fact and decree in failing to find a gift of the shares of stock involved because the evidence clearly showed an intent to make a gift, and that since the shares were registered in the name of the appellant there was a sufficient delivery to constitute a valid gift.

Respondents contend that the court did not err in decreeing there was no gift to plaintiff or plaintiff and her mother because the stocks were purchased by Mr. Yoffie, were under his complete control and dominion, were always in his possession and because he did not intend that plaintiff or his wife should have any right or title to the shares.

■ Our duty on this appeal is to review this equity case upon the law and evidence and to reach our own conclusions from a consideration of all evidence, giving due deference to the opportunity of the trial court to judge the credibility of the witnesses. The judgment is not to be set aside unless clearly erroneous. Rule 73.01(d), V.A.M.R.

■ Under the facts and circumstances disclosed by this record we hold that there was a gift of the shares of stock in the above named corporations to Evelyn Yoffie, either as a sole donee or as a joint tenant with her mother Edna. We, therefore, reverse the judgment of the trial court because as a matter of law, and under the following authorities and reasons, all the essential elements of an inter vivos gift were satisfied.

■ The essentials of an inter vivos gift of personal property are: " '. . . a present intention to make a gift on the part of the donor, a delivery of the property by the donor to the donee, and an acceptance by the donee, whose ownership takes effect immediately and absolutely.' " Wantuck v. United Sav. & Loan Ass'n, 461 S.W.2d 692, 694 (Mo. banc 1971), overruled on another point in In re LaGarce's Estate, 487 S.W.2d 493 (Mo.1972). See Thomas v. Thomas, 107 Mo. 459, 18 S.W. 27, 28 (1891); In re Simms' Estate, 423 S.W.2d 758, 762 (Mo.1968).

■ Although there are some decisions to the contrary, the great weight of authority is to the effect, and the later decisions hold, that there is a completed gift of corporate shares when by direction of the owner they are transferred to the donee on the books of the corporation and new certificates are issued in the name of the donee, or new certificates are issued in the name of the donee in the first instance, even though the certificates so issued are retained by the donor and not delivered to the donee. See cases collected in Annot., 23 A.L.R.2d 1171, 1186 (1952); Annot., 152 A.L.R. 427 (1944); Annot., 99 A.L.R. 1077, 1080 (1935); 38 Am.Jur.2d Gifts Sec. 51 (1968); see discussion in Brown, Personal Property 197 (2d ed. 1955).

■ In Wahl v. Wahl, 357 Mo. 89, 206 S.W.2d 334 (Mo.1947) our Supreme Court stated that there is a complete gift of corporate stock where " '. . . a certificate is issued in the first instance in the name of the donee, although the certificate so issued is retained by the donor or the corporation, and not delivered to the donee . . . Similarly, a completed gift of corporate stock is made by causing it to be issued in the name of another, although the certificates are not detached from the stock book and are not delivered to the donee, but remain in the custody of the corporation, and the donee is ignorant of the transaction at the time.' . . . The transfers of the stock on the books of [the companies] consummated an irrevocable gift . . . [The donor's] right to vote the stock and to receive dividends in no way affected the validity of the gift." Wahl, *supra*, 206 S.W.2d at 337–338.

■ In the case of a transfer of stock to children or to persons considered "almost as children", Wahl, *supra*, 206 S.W.2d at 338, the law will raise a presumption of a gift from parent to child where it would not be presumed between strangers. Jones v. Jones, 201 S.W. 557 (Mo.App.1918); Wahl v. Wahl, *supra*; Napier v. Eigel, 350 Mo. 111, 164 S.W.2d 908 (1942); Gillespie v. Gillespie, 289 S.W. 579 (Mo.1926); Rumsey v. Otis, 133 Mo. 85, 34 S.W. 551, 553 (1896).[1]

In Jones v. Jones, *supra*, A. G. Jones and others organized a bank. It was agreed that no stockholder should own more than ten shares. A. G. Jones took ten shares in his own name and placed seven more shares on the books of the bank in the name of his son. These seven certificates were kept in the private bank box of A. G. Jones. The evidence did not disclose what arrangements, if any, as to this stock existed between A. G. Jones and his son. In the course of the opinion the court said that ". . . the rule of law is that it is not a sufficient delivery of stock for a party to merely have the stock transferred to the name of the transferee, but in addition to this an actual or constructive delivery of the stock to the transferee must be shown." Jones v. Jones, *supra* at 557–558 of 201 S.W. But the court held that there was a valid gift and a valid delivery because ". . . other evidence strongly [tended] to show that Dr. Jones delivered this stock to his son." This other evidence was found in the presumption of a gift between parent and child and in mailing notices of stockholders' meetings.

The language of *Jones* stating that a gift does not result when a party merely transfers stock does not square and is not consistent with later decisions of this and other states. Wahl v. Wahl, *supra*; see cases collected in Annot., 23 A.L.R.2d, *supra*; Buresh v. First Nat. Bank of Oregon, 496 P.2d 913 (Or. banc 1972).

Under the evidence adduced, all the elements exist to show a gift from Mr. Yoffie to his daughter Evelyn. The evidence shows that Mr. Yoffie began a program of purchasing stock in Evelyn's name in the early 1950's, deposited her dividends in her account, kept a record of her holdings and dividends and provided information to his

1. "This family relationship presumption recognized in the Napier case [Napier v. Eigel, 350 Mo. 111, 164 S.W.2d 908 (1942)] as between sisters was extended in Longacre v. Knowles, Mo., 333 S.W.2d 67, to an uncle and nephew relationship. There are many cases recognizing the presumption and abrogating the requirement of delivery as between parent and child. Du Montimer, supra [Commonwealth Trust Co. v. Du Montimer, 193 Mo.App. 290, 183 S.W. 1137, 1139 (1916)], was a case involving brother and sister. In Wahl v. Wahl, 357 Mo. 89, 206 S.W.2d 334, the presumption of delivery was further extended to plaintiffs who were children of a sister of deceased's first wife whom he had reared in his home and educated and whom he trusted and 'considered almost as his own children.' Analyses of cases from other jurisdictions cited . . . give further illustration of the family relationship doctrine . . . ." Wantuck, *supra* at 695 of 461 S.W.2d.

accountant so that Evelyn's income tax returns reflected the dividends received by her. It was not until after the present litigation was begun that Mr. Yoffie amended his tax returns and paid the taxes on these dividends.

■ While we agree that there must be a donative intent, Feil v. First Nat. Bank, 269 S.W. 936 (Mo.App.1925), the essential element of the donative intent by Mr. Yoffie is manifested here. In the first place the fact that the shares of stock were originally placed in and registered in Evelyn's name is evidence of his objective intent to make a gift of the shares to her. Also, the fact that the relationship of father and daughter existed raises the strong presumption that a gift of the shares was intended. The fact that the dividends or benefits of the shares were unquestionably for the benefit of Evelyn is important to show the intent of the donor. The certificates were in the name of Evelyn and she testified that she saw the certificates in her name when they were delivered to the family home. In Wahl, *supra*, there was held to be a gift where the donor had the right to vote the stock and receive the dividends, and this did not preclude the court from holding that a gift was consummated. So much more so then when the dividends are received by and are for the benefit of the donee. Mr. Yoffie also kept a separate record of Evelyn's dividends, with her name and social security number thereon, from which her income tax was computed and paid.

In short, all that Mr. Yoffie did over the years objectively evidenced an intent to give the stock to his daughter.

■ As to the delivery, there need not, of course, be a physical delivery of the certificates to the donee. The fact that the certificates were retained by Mr. Yoffie in his safe deposit box does not preclude the making of a gift. Jones v. Jones, *supra*; Wahl v. Wahl, *supra*. In such instance there is a constructive delivery of the shares. The crucial issue of delivery was settled in Wahl, *supra*, 206 S.W.2d at 337. By purchasing the shares originally in Evelyn's name and later in joint names Mr. Yoffie effectively relinquished control and dominion over the shares, even though he physically retained the certificates in his safety deposit box. The test is whether the donor put it out of his power to repossess the property and relinquished dominion. Genteman v. Sutter, 215 S.W.2d 477 (Mo. 1948). By taking out the stock in another's name the donor effectively relinquished control and dominion over the shares, and by registering the shares in the donee's name there was a sufficient and constructive, although not actual, delivery. This is the overwhelming weight of authority.

■ The third essential element of acceptance is also present. The rule is that acceptance will be presumed when the gift is entirely beneficial to the donee unless the contrary appears. Jones v. Jones, *supra*, 201 S.W. at 558.

In his sagacity of desiring to help and aid Evelyn Mr. Yoffie may have subjectively determined that some day he would make a gift *in futuro*, but all the objective evidence shows, and the law is clear, that a gift was made of the shares of stock in these corporations to his daughter. We are not accorded the luxury of individualizing our decisions. Although Mr. Yoffie may have believed he was doing what he thought best for his daughter, we must look to and are bound by principle and we are required to keep our eyes on the broad picture of the law. To permit a present gift to be overturned years later because of a subjective intent of a donor not to make a gift and thus destroy settled rights would be detrimental to the stability of title to personal property and would cause untold uncertainties by undoing what is certain.

The only issue which we are required to determine in the posture of this appeal is whether there was a gift of the shares of stock listed above to Evelyn either as a sole donee or as a joint tenant with her mother Edna. We believe that under the evidence

there was a gift to Evelyn by Mr. Yoffie. But since the shares of stock were placed or purchased in the names of Evelyn and her mother Edna we do not rule on the rights of Evelyn and Edna *inter sese.* Sec. 528.-620, RSMo 1969, V.A.M.S.

The trial court erred in finding that there was no gift made by Mr. Yoffie. Because the trial court arrived at this decision it was unnecessary for the court to decide the other issues raised by the pleadings filed by the parties.

Therefore, the judgment is reversed and the cause remanded for further proceedings under the pleadings.

SMITH, P. J., and KELLY, J., concur.