**MAPLE TREE INVESTMENTS, INC., Appellant,**

v.

**John L. PORT, Personal Representative of the Estate of Laura G. Port, and John L. Port, Trustee, Respondent.**

No. WD 44391.

Missouri Court of Appeals, Western District.

Dec. 24, 1991.

Michael G. Berry, Jefferson City, for appellant.

Kenneth D. Kyser, Moberly, for respondent.

Before LOWENSTEIN, C.J., and TURNAGE and SPINDEN, JJ.

SPINDEN, Judge.

In this cross-appeal, Maple Tree Investments, Inc., challenges the trial court's refusal to declare a deed of trust executed by Laura G. Port to be a valid lien against real estate previously conveyed by Port to a revocable trust in which she and her son, John L. Port, were cotrustees. Laura Port's estate and John Port challenge the court's enforcement of a promissory note and guaranty executed by Laura Port; they contend that Port signed the note and guaranty under duress.

This controversy arose in 1985 when John L. Port and his wife at that time, Janet M. Port, fell behind in payments on four promissory notes to the Citizens Bank of Windsor, Missouri. On February 15,

1985, Citizens Bank demanded full payment of the $105,278.45 principal and interest owing. The bank also informed Laura Port of the demand because on February 27, 1984, she had executed a personal guaranty for $5000 of the debt.

John Port testified at trial that after he unsuccessfully attempted to refinance the notes, Citizens Bank president and chief executive officer J.W. Simmons met with him on September 29, 1985, and insisted that he pay at least the interest owing, $9086.71. Port said that when he told Simmons that he did not have the money, Simmons strongly urged him to have his mother mortgage her residence to obtain the funds. Port refused. Port further testified, without objection, that others told him that a few days later Simmons met with Laura Port for three hours and told her that if she did not mortgage her house to pay the interest her son would go to jail.

On October 1, 1985, Laura Port signed a promissory note payable to Citizens Bank for $9086.71, a guaranty agreement guaranteeing $75,000 of her son's and Janet Port's debt, a deed of trust on her real estate to secure the $75,000 debt, and a check for $9086.71 payable to the bank. Bank officials prepared all of the documents for Laura Port's signature.

Laura Port had deeded the real estate on January 13, 1983, to a revocable, inter vivos trust for which she and her son were cotrustees. The trust's purpose, as determined by the trial court, was to protect Laura Port and her assets because her mental and physical health at the time were poor. She lived alone and was in "a vulnerable condition." She intended for the trust to prevent inappropriate dispositions of her property. John Port prepared the trust agreement, and his mother signed it on January 11, 1983. The agreement provided:

> It is specifically understood that Grantor reserves the right and power during her lifetime, without being joined by any other person, and without the consent of the Trustees ... [t]o revoke or vacate this Trust in whole or in part, or to withdraw any of the trust property from its operation at any time during her lifetime by giving written notice to the Trustees, and upon the receipt of any such notice by the Trustees revoking or vacating this Trust or requesting the withdrawal of any of the trust property this Trust as to such property shall stand revoked and vacated and the same shall be delivered to the Grantor free from this Trust, and the Trustees shall make, execute and deliver to the Grantor such instruments in writing as may be necessary to release to the Grantor and transfer to her any and all rights which Trustees or their Successors may have acquired in said property[.]

Although Laura Port did not issue written notice of the October 1, 1985, deed of trust to her trust's trustees as provided for in the trust agreement, John Port learned of it on October 2 or 3, 1985, from other sources. He received a photocopy of the deed of it on November 29, 1985, from Citizens Bank's attorney.

On July 29, 1986, Citizens Bank sued Laura Port, John Port and Janet Port for payment of the promissory notes and sought judicial foreclosure on the real estate described in the October 1, 1985, deed of trust. The bank failed during December 1986, and the Federal Deposit Insurance Corporation (FDIC) became the successor in interest. During 1987, John Port and Janet Port were discharged through bankruptcy from any personal liability on their debt to Citizens Bank. In February 1988, FDIC sold the Port notes and guaranty to Maple Tree.

The trial court entered its findings of fact and conclusions of law on November 30, 1990, and adopted them in its judgment of January 16, 1991, finding in favor of Maple Tree against the estate of Laura Port for $89,219.25 plus interest and for attorney's fees in the amount of $1817.32. The trial court refused to declare the October 1, 1985, deed of trust to be valid. It held:

> [Laura Port's] execution of this Deed of Trust was insufficient to pass an interest in the real estate unless it can be said that by doing so she revoked the trust.

... Laura G. Port failed to comply with the revocation requirements explicit within the trust instrument by having failed to notify Co-trustee John L. Port.

\*     \*     \*     \*     \*     \*

... The Trust was intended to prevent inappropriate dispositions of her property by requiring the assent of the co-trustee John L. Port, her son, and attorney. [Maple Tree] seeks a ruling which if granted, would defeat the Trust and its purpose under circumstances in which just such a trust was advisable to prevent just what occurred herein.

[A]pparently, [Maple Tree's] predecessors failed to consult the Deed Records of Henry County, Missouri, at the time the Deed of Trust was secured; had they done so, the Deed to the Co-trustees in Trust would have been evident.

### Validity of the Deed of Trust

■ Maple Tree asserts that the trial court should have declared the deed of trust to be valid because, although Laura Port did not give formal, written notice of the October 1, 1985, deed of trust, John Port learned of it and obtained a copy from another source in sufficient satisfaction of the notice requirement. Maple Tree relies on *Lipic v. Wheeler*, 362 Mo. 499, 242 S.W.2d 43, 46 (1951), in which the Supreme Court ruled "that where no method of exercise is specified, alteration or partial revocation powers may be exercised in any manner sufficiently manifesting an intention to alter or to partially revoke." Maple Tree argues that the trust agreement in this case did not specify a method for revoking the trust or withdrawing property from it. We disagree.

The trust agreement in *Lipic* stated only, "I also reserve full power and right to amend or alter this trust from time to time as I shall deem proper and expedient[.]" *Id.* Laura Port's trust agreement specified a two-step procedure for revocation: (1) notice of revocation to the trustees and (2) the trustees' issuance of "such instruments in writing as may be necessary to release to [Laura Port] and transfer [the property] to her[.]"

■ Because the trustees did not deliver a release or transfer the property, we conclude that the deed of trust did not revoke the trust. When a trust agreement sets forth a particular manner for the trust's revocation, a settlor can revoke the trust only in that manner. *St. Louis Union Trust Company v. Dudley*, 162 S.W.2d 290 (Mo.App.1942).

Maple Tree focuses on the notice requirement and asserts that it was satisfied in this case the same way it was satisfied in *Dudley:* The settlor "waived the absurdity of any written notice from himself as donor addressed to himself as trustee" and that the nonsettlor trustee waived notice by being aware of the settlor's removal of the res and acquiescing. *Id.* at 294. Even if John Port did waive notice in this manner, Maple Tree does not explain how the second prong of the trust agreement's requirements, the trustees' release or transfer of the property back to Laura Port, was satisfied. A writing conveying the property from the trustees back to Laura Port was necessary to provide a marketable title. A trustee has legal title to a trust's res. *See Simmons v. Friday*, 359 Mo. 812, 224 S.W.2d 90 (1949). Failure to satisfy this requirement is fatal to Maple Tree's theory that the deed of trust revoked the trust. Hence, we affirm the trial court's judgment on this issue.

### Estoppel

■ As an alternative argument, Maple Tree asserts that the trial court should have estopped John Port from denying the deed of trust's validity because he and Laura Port benefitted from conveyance of the deed of trust to the detriment of Citizens Bank and because Laura Port warranted title. Estoppel is not a favored remedy. Because Maple Tree seeks to preclude John Port from denying the truth of his mother's title in the deeded property, it is a matter we do not invoke lightly. *Board of Managers of Heatherton Homeowners Association, Inc. v. First Capitol Oil Company*, 798 S.W.2d 176, 179 (Mo.App.1990); *Foster v. Modern Woodmen of America*, 235 Mo.App. 386, 138 S.W.2d 18, 25 (1940).

Maple Tree relies on a rule of equity, estoppel by deed, announced in *Bailey v. Trustees of Lincoln Academy,* 12 Mo. 174 (1848), "that a recital, in a deed of a fact, will, in general, conclude the grantor and his privies." The trial court rejected Maple Tree's estoppel theory on the ground that John Port did not sufficiently benefit from Laura Port's conveyance of the deed of trust to estop his attack on the deed's validity.

We agree. The Illinois Court of Appeals recognized, in *State National Bank of St. Joseph v. John Moran Packing Company, et al.,* 68 Ill.App. 25 (1896), *affirmed* 168 Ill. 519, 48 N.E. 82 (1897), an exception to the general rule set forth in *Bailey.* In *State National Bank,* the court refused to estop a mortgagor from challenging a mortgage given solely to secure a long-time, pre-existing debt, which was past due and wholly unpaid. The court reasoned:

The [mortgagor] can not be said to have been, at the time the attachment of the [mortgagee] was made, the recipient of such benefits under the mortgage sought to be foreclosed, that it was then estopped to deny the validity of the same. The mortgage was given, not for anything by the [mortgagor] then received, or any detriment suffered by the [mortgagee]; the consideration was a debt that had long existed, and the mortgage was consequent upon the demand of [the mortgagee] that such debt should be paid or secured.

*Id.* at 41. The same is true of Laura Port's conveyance of the deed of trust to Citizens Bank.

█ The estate and John Port assert in their briefs a second countervailing rule of equity which prevents a party who knew the truth, or had the same means of knowledge as the other to the truth, from asserting estoppel. *Land Clearance for Redevelopment Authority of Kansas City v. Dunn,* 416 S.W.2d 948 (Mo.1967). Laura Port's conveyance of property to the trust was recorded in the deed records of Henry County as required by § 442.380, RSMo 1986. Maple Tree does not contest the trial court's finding that Citizens Bank officials failed to consult those records. Had they done a title search, they would have discovered that Laura Port previously had conveyed the property to the trust.

Notwithstanding their failure to do a title search of Laura Port's deed of trust, we deem the bank officials to have known of the cloud on the real estate's title. The Supreme Court of Missouri stated long ago:

[T]he purchaser is expected to search the registry for all conveyances from his vendor, after the time the vendor acquired title, so that he (the purchaser) may know whether his vendor has conveyed the land purchased to any one else. If he is presumed to do this, is he not also presumed to look for conveyances from his vendor which might affect or incumber the vendor's title to the land conveyed to the purchaser? We think so.... [A] purchaser must at his own peril inquire into the state of his grantor's record title, since he will be affected with constructive notice of all duly recorded conveyances by his grantor affecting that title.

*King v. St. Louis Union Trust Co.,* 226 Mo. 351, 126 S.W. 415, 420 (1910). *See also Nickels v. Cohn,* 764 S.W.2d 124, 135 (Mo. App.1989). Because of their deemed, or constructive, knowledge that Laura Port had previously conveyed the property to her trust, the trial court properly refused to sustain Maple Tree's estoppel theory.

### Validity of the Promissory Note and Guaranty

█ John Port and Laura Port's estate cross appeal the trial court's judgment against the estate for $89,219.25 plus interest and for $1817.32 in attorney's fees. They contend that Laura Port signed a promissory note and guaranty giving rise to the judgment under duress by Citizens Bank officials. We affirm the judgment.

The estate and Port base their assertion on evidence which the trial court heard and weighed. Although the trial court found that Laura Port's mental and physical health was poor and that she was vulnerable, it did not find that she had been in-

duced by fraud or duress to sign the documents or that she was incapacitated. The trial court's findings concerning this issue are supported by substantial and competent evidence. We discern no basis for overturning them. *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976).

All concur.