**ESTATE OF Charles B. ODEN, Sr., Deceased, Charles B. Oden, Jr., Personal Representative, Archie Lee Sturgess and Margaret E. Sturgess, Appellants,**

v.

**Charles B. ODEN, Jr., Personal Representative, Respondents.**

No. 66873.

Missouri Court of Appeals, Eastern District.

Sept. 19, 1995.

Michael Allen, St. Louis, for appellants.

Lester H. Goldman, St. Ann, for respondents.

CHARLES B. BLACKMAR, Senior Judge.

Charles B. Oden, Sr. died April 2, 1988, at age 92. His son and personal representative, Charles B. Oden, Jr., brought an action in the Probate Division of the Circuit Court to discover assets of the estate, asking that a deed executed by the decedent conveying a six or seven acre tract in north St. Louis County to deceased and Archie Lee and Margaret E. Sturgess as joint tenants be set aside on grounds of want of legal capacity and undue influence. Unless the deed were set aside, there would be no substantial assets in his estate. The trial court, after hearing, found that the claims of want of capacity and undue influence were established by clear and convincing evidence, and entered judgment as prayed setting aside the conveyance. We conclude that the finding and conclusion of undue influence is amply supported by the law and evidence and affirm, finding it unnecessary to decide the question of want of capacity. We state the evidence supportive of the judgment and give the respondent the benefit of all reasonable inferences from the evidence. The appellants' brief presented a 20–page statement of facts, which is essentially a digest of the testimony. The respondent accepts this statement. We set forth the material facts which the trial judge could have found in support of his judgment.

Charles, Sr. lived in a "squatter's house" on the north county tract, which he had acquired in the mid-thirties. His wife had died in 1980. He had social security and a modest pension, and derived additional support by truck gardening on his land. He maintained himself, although witnesses described his cabin as a "mess" and as "filthy." He was described as "crotchety" and had a tendency to repeat himself. Charles, Jr. was his only child. He had a stepdaughter also. Father and son were on reasonably good

terms. Charles, Jr. had suggested, without success, that his father should come to live with him. He considered his father to be legally competent, at least until the latter part of 1987.

Charles, Sr. was friendly with the appellants, Archie and Margaret Sturgess. Archie was his grand-nephew, being the grandson of his deceased sister, but Charles, Sr. had not made the acquaintance of him and his wife until the mid-seventies. They planted a small garden on Charles, Sr.'s property, paying him a modest rental.

In 1983 Charles, Sr. executed a will leaving all his property to Charles, Jr., who was named personal representative. The will was prepared by Attorney Rex Gould.

In early August of 1985 Charles, Sr. suffered a sudden illness requiring immediate hospitalization. There was no diagnosis by a medical expert, but several witnesses testified without objection that he had suffered a stroke. He seemed weak and pale during and after the hospital stay. He remained in the hospital for about seven days, after which Charles, Jr. took him to his house. When Charles, Jr. tried to give him some prescribed medication his father refused it and declared that his son was trying to poison him. The admissibility of this evidence is strongly challenged, as will appear later. The appellants were present at the time, and Charles, Jr. asked them if they could take his father home with them and calm him down. They agreed, and Charles, Sr., remained with them for three to five weeks. Toward the end of his stay he would spend several hours each day at his home. After moving back to his cabin he spent part of his time with the appellants. Charles, Jr. had no direct contact with his father for several months after the poisoning accusation. He testified that they had had a "falling out" and that his father was afraid that he would put him back in the hospital.

On August 30, 1985, while he was staying at the appellants' residence, Margaret Sturgess drove Charles, Sr. to the office of an attorney, Howard N. Neuman, who had suc-

ceeded to Gould's practice. There Charles, Sr. executed a will leaving all of his property to Archie and Margaret Sturgess. Neuman had access to Gould's files, which included a file relating to the 1983 will, but he did not consult this file, and did not determine that Charles, Sr. had a living son. Charles, Jr. is not mentioned in the 1985 will.

On October 1, 1985, which seems to have been shortly after he returned to his home, Charles, Sr. executed a quitclaim deed conveying the north county tract to "Archie Lee Sturgess and Margaret E. Sturgess, his wife, and Charles B. Oden, Sr. as joint tenants with right of survivorship." The deed was prepared by Attorney R.W. Jacobsmeyer. Both Archie and Margaret Sturgess were with Charles, Sr. at Jacobsmeyer's office. They had driven him there. Jacobsmeyer was their regular attorney, and had also done work for Archie Sturgess's business. The deed was recorded shortly after it was executed.

Under date of October 1, 1985, Charles, Sr. executed a power of attorney in favor of Archie Lee Sturgess. This document was prepared and notarized by Jacobsmeyer. Charles, Sr. also converted his bank account into a joint account with Margaret Sturgess, with the expectation that she would write checks for his bills. This account remained open at the time of his death, with a balance of $28,000. No question is presented in this case as to that account.

Under date of November 26, 1985, Charles, Sr. and Mr. and Mrs. Sturgess conveyed a 40–foot strip along one side of the north county property to Joseph C. Molinaro, a neighbor. The transfer was for consideration. The closing was supervised by a title company. Molinaro had dealt with Charles, Sr. and seemed to be unaware of the Sturgess interest in the property.

Charles, Jr. resumed friendly relations with his father some time after the quitclaim deed was executed. He noticed a change in Charles, Sr.'s physical and mental condition during the latter part of November of 1987. At some time during that year he discovered

that the names of Archie and Margaret Sturgess were on the tax receipt for the north county tract. He had not known previously of the conveyance in joint tenancy.

On November 3, 1987, Charles, Sr. executed a third will, leaving a bequest of $1000 to a friend, Helen Wong, with the residue to be divided ¾ to Charles, Jr., and ¼ to his stepdaughter, Helen Aldrich. This will was prepared by Mr. Neuman.

Also on November 3, 1987, Charles, Sr. signed a verified petition in an action to cancel the deed establishing the joint tenancy. This suit was filed by Neuman. Although the appellants testified that they would have given the property back to Charles, Sr. if he had asked them to, they retained Jacobsmeyer to defend the suit. Neuman had trouble getting in touch with Charles, Sr. to answer interrogatories. The suit was pending at the time of Charles, Sr.'s death on April 2, 1988, and was then dismissed without prejudice.

On December 8, 1987, Charles, Sr. executed a revocation of the power of attorney previously given to Margaret Sturgess. This document was also prepared by Neuman.

Trial consumed two days. At the close of the personal representative's evidence the defendants Sturgess moved for "directed verdict" which the court overruled, making the following observation:

> No, I think there's sufficient evidence, and it could be classified as clear and convincing to support a judgment against Archie. Now, as far as Mrs. Sturgess is concerned, of course she—her name is on the deed; is that correct? She does have an interest in the property. Now, whether or not she took part in any—exerted any undue influence, I don't think really makes any difference because she is in there. She has to be a party to the action. And if there was undue influence by Archie and he directed that the deed be made conveying an interest to her, even though she wasn't a participant, nevertheless she was a beneficiary and I think she is a necessary party.

The defendants then introduced evidence. At the close of all the evidence the court announced its findings from the bench, concluding that both the claims of want of capacity and of undue influence were well taken. A decree cancelling the quitclaim deed was entered, from which Archie and Margaret Sturgess appeal.

### 1. The New "Dead Man" Statute § 491.010, RSMo.1994

The appellants argue that the court received evidence which is inadmissible hearsay under Sec. 491.010, RSMo.1994. This statute was adopted in 1985 to replace the historic "Dead Man" statute, previously codified under the same section number. The statute declares, as did the prior statute, that interest generally does not operate to disqualify a witness, and then goes on to provide as follows:

> 2. In any such suit, proceeding or probate matter, where one of the parties to the contract, transaction, occurrence or cause of action, or his agent in such matter, is dead or is shown to be incompetent, and the adverse party or his agent testifies with respect thereto, then any relevant statement or statements made by the deceased party or agent or by the incompetent prior to his incompetency, shall not be excluded as hearsay.

■ Counsel for the appellants scrupulously refrained from asking his clients to testify regarding the "transaction, occurrence, or cause of action." Opposing counsel introduced portions of their deposition testimony, but involuntary testimony does not trigger the exception to the hearsay rule expressed in Section 2 of the statute. *In re Estate of Dawes,* 891 S.W.2d 510, 519 (Mo. App.S.D.1994); *Frasher v. Whitsell,* 832 S.W.2d 18, 20 (Mo.App.W.D.1992). It would be improper, therefore, for the court to receive evidence as to statements of the decedent which would otherwise be inadmissible under the hearsay rule.

■ The primary statement objected to, however, is Charles, Sr.'s statement that

Charles, Jr. was trying to poison him. Both Charles, Jr. and another witness testified to having heard him say this. The statement is not excludable hearsay. It could be admitted as an indication of Charles, Sr.'s state of mind. *In re Estate of Dawes*, 891 S.W.2d at 519–20. It could also be received in evidence to show that Charles, Sr. was possessed of an irrational delusion. The statement is not hearsay of the objectionable type, because it was certainly not offered to show that Charles, Jr. was indeed trying to poison his father.

■ Appellants also object to the receipt into evidence of documents executed by Charles, Sr., asserting that they constitute hearsay. This assertion approaches the frivolous. The documents in question were instruments of legal significance, acknowledged before notaries public, and therefore are self-authenticating. The only objection made was pursuant to Sec. 491.010. There is a clear distinction between testimony and documentary evidence. *In re Estate of Dawes*, 891 S.W.2d at 519 (citing *Scheidegger v. Thompson*, 174 S.W.2d 216, 219 (Mo.App.1943)). The documents were properly received into evidence.

■ Nor is there substance to the other hearsay objections. The testimony of Margaret Sturgess, and the excerpts from the deposition of Archie Sturgess, were properly received in evidence as admissions against interest. The decedent's statements in 1987 to the effect that he had no recollection of the quitclaim deed were appropriately received as showing the state of his memory. Charles, Jr.'s statement that he learned about the power of attorney from his father, even if hearsay, was neither adverse nor prejudicial to the appellants.

■ The appellants fault the trial judge for asking a question of witness Mary Thomas which, according to their theory, would call for inadmissible hearsay. Specifically the court asked what Charles, Sr. had said to her, and she answered "he said, hi, there, how are you?" They also complain about his

asking witness Molinaro about Charles, Sr.'s reply to Molinaro's inquiry about the possible purchase of the 40 foot strip. Counsel interrupted the witness's answer before he could complete it, and no further answer was made. That questioning related to another transaction. The court may properly ask clarifying questions. No inadmissible hearsay is shown to have made its way into the record as a result of these questions.

■ The appellants misunderstand the purpose of the present Section 491.010. The historic "Dead Man" statute operated to disable interested witnesses from testifying about transactions with deceased persons. The 1985 amendment completely abandoned this approach. It maintains the principle that any competent, relevant, and material evidence may be received, without regard to the interest of the party testifying, and removes an exception contained in the prior statute. Its purpose is to allow the court to receive evidence which was previously inadmissible. The statute also provided that certain evidence which would otherwise be excludable under the hearsay rule could be received, if the opposing party voluntarily testifies about dealings with a person who has died or become incompetent. The present statute has no purpose of excluding evidence historically admissible under "firmly rooted" exceptions to the hearsay rule. See *Idaho v. Wright*, 497 U.S. 805, 816, 110 S.Ct. 3139, 3147, 111 L.Ed.2d 638 (1990). The purpose of the new Sec. 491.010 was to permit the receipt of previously inadmissible evidence, and not at all to require the exclusion of evidence otherwise admissible. The trial judge's rulings were consistent with the above analysis. He carefully excluded any hearsay which was not covered by a recognized exception. No inadmissible and prejudicial hearsay is demonstrated.

### 2. *Clear and Convincing Evidence*

■ An action to set aside a deed is a matter of equitable cognizance. Myriad cases hold that relief will be granted only on the basis of "clear and convincing" evidence.

See *Estate of Helmich v. O'Toole*, 731 S.W.2d 474, 477–78 (Mo.App.1987). We are mindful of this court's statement in *Estate of Gross v. Gross*, 840 S.W.2d 253, 257 (Mo.App.E.D. 1992), that a lesser burden of proof applies in a proceeding to discover assets than in a suit to set aside a conveyance, but that action turned on jury instructions and we shall assume that the higher standard applies to this case because we conclude that the proof meets that standard. The appellants argue that there is no substantial evidence of either want of mental capacity or of undue influence, and that the personal representative's circumstantial evidence is so far outweighed by the appellants' direct evidence that the evidence proffered to support cancellation cannot be said to be clear and convincing. We disagree.

■ We dispose first of the appellants' claim that the trial judge demonstrated by his remarks in overruling the motion for "directed verdict" that he had already made up his mind on the case before hearing the defendants' evidence. The claim is without merit. By their motion the appellants asked the court to rule as to whether the personal representative had introduced evidence which, if believed, would support a judgment in his favor. The trial judge ruled that he had. He used the phrase, "clear and convincing" because that is the standard he assumed the law required. See *Fix v. Fix*, 847 S.W.2d 762, 765 (Mo. banc 1993). By no means did he suggest that he would not consider the defendants' evidence, or that he would necessarily believe the personal representative's witnesses after having heard all the testimony. His ruling was responsive to the motion. The defendants then presented their evidence, and the case was ruled on the basis of the complete record. This is the usual and customary judicial practice.

The personal representative necessarily relied on circumstantial evidence to establish undue influence. The words of Judge Archelaus M. Woodson, written nearly 75 years ago, are still appropriate. Writing for the Court in *Coldwell v. Coldwell*, 228 S.W. 95,

102 (Mo.1920) he expressed himself as follows, "As a rule, undue influence is not proclaimed from the housetop, but is hidden like a candle beneath a bushel and concealed like fraud and deception, only appearing through carelessness and unguarded openings, but ever present and potential." In discussing undue influence it was further stated in the case, "How shall we detect its presence? Manifestly, this may best be done by that tribunal to which is afforded the opportunity of meeting the witnesses face to face and hearing them testify in any given case." *Id.* (citations omitted).

The opinion went on to state that it was not necessary to show that alleged undue influence was manifest during the execution of the challenged instrument. See also *Kaechelen v. Barringer*, 19 S.W.2d 1033, 1039 (Mo.1929). Thus the testimony of attorneys Neuman and Jacobsmeyer as to their observations of the decedent while in their respective offices, even if believed, did not preclude a finding of undue influence based on the totality of the evidence.

■ The trial judge announced from the bench that, in ruling the case, he relied on the decedent's age, his recent stroke, his delusion about his son's trying to poison him, the abrupt departure from his prior testamentary plan, his executing the second will and the quitclaim deed while he was in close contact with the appellants, the element of secrecy regarding the quitclaim deed, and the inconsistency between the appellants' statement that they would have given back the property on request and their undertaking the defense of Charles, Sr.'s suit to cancel. He also mentioned the absence of testimony from Archie Sturgess, who knew more than anybody else about the deed transaction.

The appellants point to Charles, Jr.'s consistent statements that he considered his father competent to manage his own affairs, the testimony of attorneys Neuman and Jacobsmeyer that he appeared to be competent at the time they supervised the execution of the legal documents they had prepared, and

Charles, Jr.'s admission that he knew of no undue influence practiced by the appellant Margaret Sturgess. They say that all the direct evidence is favorable to them, and that the contrary evidence cannot be said to be clear and convincing. The evidence which seemed most persuasive to the trial court, however, covered the period from Charles, Sr.'s removal to the appellants' home through the time of execution of the quitclaim deed. Charles, Jr. was out of touch with his father during this period, and for some time afterward.

The appellants appear to argue that, when the evidentiary standard is "clear and convincing" the appellate courts have greater authority to review the evidence than is the case in the ordinary civil appeal. We do not agree. The phrase, "clear and convincing" represents a legal standard more stringent than the "preponderance of the evidence" or "if you believe" test of ordinary civil cases, but not so strong as the "beyond reasonable doubt" instruction which is given in criminal cases. It is an historic test used in equitable cases, but the phrase is also found in civil jury instructions such as MAI 3.04 (establishing a gift); 3.05 (falsity in libel actions); 3.06 (punitive damages for defamation cases); and 3.07 (commitment for mental illness). The word "cogent," which is sometimes found between "clear" and "convincing," adds "little, if anything." *Grissum v. Reesman*, 505 S.W.2d 81, 85–86 (Mo.1974).

■ The phrase, "clear and convincing," is addressed to the trier of fact, whether court or jury. It serves as a caution to the fact-finder to take particular care in granting affirmative relief. We agree with the Southern District, however, that appeals in cases in which the trial court has granted affirmative relief are nevertheless governed by the rule of *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976), even though the clear and convincing standard applies. *In re Estate of Dawes*, 891 S.W.2d 510 at 522–23. The appellate court should not reweigh the evidence, any more than in a case in which the preponderance standard obtains. A judgment may be affirmed, even though there is contrary evidence. The evidence supporting the judgment may be taken as true, and the prevailing party is entitled to all reasonable inferences from the evidence. The trial court may reject or give minimal effect to evidence found to be unpersuasive.

Tested by this standard, the record amply supports the finding of undue influence. The appellants properly argue that neither advanced age, infirmity, access, nor execution of a gratuitous conveyance would necessarily be sufficient to support a finding of undue influence. We must, however, give attention to the totality of the circumstances, rather than viewing particular circumstances in isolation. The record shows that the decedent departed from his established testamentary plan and left his property to remote relatives whom he had not even known for most of his life, to the exclusion of his only son. He did this at a time when he was temporarily estranged from his son because of an irrational delusion about the son's trying to poison him. He was living with the new beneficiaries, who took him to the lawyer who drafted the second will. Some time later the beneficiaries took him to another lawyer, who had represented them in the past, and who prepared the quitclaim deed accelerating the existing testamentary provision. This somewhat redundant instrument might serve to arouse further suspicion. Its only effect was to make a previously revocable testamentary plan irrevocable. Even though the deed was recorded, Charles, Jr. was not told about it, and Joseph Molinaro, who purchased a strip of the property, was under the impression that he was dealing only with Charles, Sr. When the facts came out Charles, Sr. revoked the will and brought suit to set aside the deed. The abrupt departure from the prior plan, the unnatural disposition, the lack of contact with his son while Charles, Sr. was living with the new beneficiaries, and their activity in connection with the execution of the will and the deed might surely persuade the trial judge that there was no other reasonable explanation, and that the deed, which is the sole document here in issue, had been

executed as the result of undue influence. He could appropriately apply the "clear and convincing" yardstick to these facts and find that they measured up.

The trial judge could properly consider the appellants' failure to provide explicit testimony about the circumstances surrounding the execution of the will and the quitclaim deed. They refrained from testifying voluntarily because of a strategic calculation, thinking that, if they did not testify without compulsion, the court would be obliged to exclude not only inadmissible hearsay, but also statements of a hearsay nature which were clearly admissible under firmly rooted exceptions to the hearsay rule. It makes no difference that their basic assumption was in error. They failed to produce evidence which was within their particular knowledge, and the trier of the fact is warranted in assuming that such evidence as they might give would not be favorable to them. He could also consider the vagueness of their testimony which did make its way into the record, and the protestations of lack of memory about significant details.

The parties have adduced numerous cases, which we have examined. We have supplemented these by our own research. The facts of the several cases differ widely, and extensive citation would not be helpful. The case we consider closest is *McCormack v. Berking*, 365 Mo. 913, 290 S.W.2d 145 (1956), a will contest. By historical accident, will contests are triable to a jury whereas suits to cancel deeds are historic equity matters which are tried to the court. The circumstances which require submission of an undue influence case to a jury should also suffice to permit a finding by the court. Otherwise there would be an inappropriate incongruity in the law. In *McCormack v. Berking*, the primary factors of change in testamentary disposition, presence of the beneficiaries with the testatrix, absence of the prior beneficiaries, and activity of the persons benefitting from it in the making of the new will were all present, along with the secondary factors of age and infirmity. Judge Hyde concluded that the circumstances in evidence, while not conclusive, sufficed to require jury submission. By the same token, submission of this case to the trial judge was required, and his finding of undue influence is supported by the evidence. This case is the stronger in one respect, because the excluded beneficiary was the decedent's only son, while in *McCormack* the dispute was between collateral relatives.

The finding of undue influence is sufficient to support the judgment. We do not need to determine whether there was also a submissible case of want of capacity to execute the quitclaim deed.

The judgment is affirmed.

WILLIAM E. TURNAGE, Senior Judge, and WHITE, P.J., concur.