In re Estate of Emma Mary MUELLER.

Gary L. JOHNSON, Appellant,

v.

Mary Lee DOYEN, Respondent.

No. 69151.

Missouri Court of Appeals,
Eastern District,
Division One.

Nov. 12, 1996.

Dana A. Hockensmith, Weier, Hockensmith & Sherby, St. Louis, for appellant.

David Gerard Ott, Brinker, Doyen & Kovacs, Clayton, for respondent.

GARY M. GAERTNER, Judge.

Appellant, Gary L. Johnson, appeals from the judgment of the Circuit Court of Jefferson County in favor of respondent, Mary Lee Doyen, on the latter's petition to require administration of the last will and testament of Emma Mary Mueller ("decedent"). Judgment was entered after a two-day bench trial. We affirm.

The following was adduced at trial. Decedent, born January 11, 1911, was a lifelong resident of DeSoto, Missouri. Decedent never married; her last known heirs at the time of her death were Shirley Wampler and Eugene Pies. Mary Lee Doyen was a close friend of decedent and decedent's family. Doyen had also worked for the family business, Mueller Electric, for several years, and by August 1989 was the owner of the company and much of its real estate. For his part, Johnson was a close friend of decedent's late nephew and knew decedent well.

John Howald, decedent's attorney, testified to the following at trial. On August 30, 1989, decedent executed both a will and a revocable living trust prepared by Howald. Johnson was named personal representative in the will and trustee in the trust. The will provided for the distribution of decedent's assets pursuant to the terms of the trust. The trust provided that upon decedent's death, any tangible personal property to which decedent had left specific written instructions was to be distributed to the intended recipients, with the remainder of the trust principal and undistributed income passed in equal shares to Johnson, Eugene Pies, James Mariscal, and St. Rose of Lima Catholic Church. Section VI of the trust reserved to the grantor the power to add property to the trust estate, but only with the consent of the trustee. Section IX of the trust stated in pertinent part:

This trust is created, and the interests hereunder are vested, subject to the express conditions and reservations that:

(a) The Grantor acting alone may at any time during the lifetime of said Grantor, revoke this Indenture in its entirety, thereby terminating the trust, . . . .

(b) The Grantor may at any time, or from time to time, by written request, delivered to the Trustee, then acting, withdraw all of such part of the principal of the trust estate as Grantor may designate and upon receipt of such request, the Trustee shall transfer and deliver to the Grantor . . . such portion or portions of the principal of the trust estate as Grantor may request. . . .

(c) The Grantor may at any time, or from time to time, by instrument in writing executed by Grantor and delivered to and executed by the Trustee, amend, alter or modify this Indenture, or revoke any amendments hereto.

Decedent contacted Howald on September 14, 1992, about possible changes to the above will and trust. Howald suggested decedent prepare a written list of the changes she wanted to make, which she did. Howald went over the list with decedent a few days later and noted the changes. Howald recommended that Johnson be present when they executed these changes, but decedent told him "she didn't want him involved now; he's got too many things on his mind, don't want him involved in the change." On September 21, 1992, Howald met with decedent in the

hospital, where she was recuperating from a serious fall. Decedent executed a new will and an amendment to the revocable living trust.

The new will named Johnson and Doyen as co-personal representatives of decedent's estate. The amendment to the revocable living trust named Doyen as successor trustee, and altered the distribution of decedent's estate in the following manner: decedent's home was to go to Eugene Pies, a building connected with Mueller Electric ("the Graham building") was to go to Doyen, and certain vacant lots were to go to St. Rose of Lima Catholic Church, with the remainder of the trust principal and undistributed income passed in equal shares to Johnson, Doyen, Eddie Burt, and St. Rose of Lima Catholic Church.

On September 24, 1992, Johnson picked up the new will, the amendment to the trust, and a cover letter drafted by Howald which read in pertinent part:

As I indicated to you by telephone and as Emma indicated, she has amended her Living Trust. Pursuant to the terms of the trust, I am including herewith her written amendment for your file as the trustee.

This amendment, as you can see, does not change any distribution during Emma's lifetime and is only directed regarding distribution after death and a change in the successor trustee in the event of your inability or unwillingness to serve.

Johnson also signed a receipt prepared by Howald stating he had received the new will, which was to be placed in decedent's safety deposit box.

Johnson never executed the September 21, 1992, amendment to the trust. Howald agreed he made a conscious decision not to ask Johnson to execute the amendment to the trust, or to inform Johnson of the requirement that he execute the amendment. However, Howald asserted he was following decedent's wishes in doing so; also, he did not think execution by Johnson was necessary: "In the situation we had here, I did not feel that the change of distribution, since it didn't change the trustee's obligations whatsoever, would require any execution by the trustee."

Some time between September 24 and October 5, 1992, Johnson called Howald. Howald made the following notes of Johnson's comments during their conversation: "I think some pressure on Emma; not upset with me, knows I did what I was told[;]" "Mary Lee should buy the building if she wants it. Why should Emma give it to her[;]" and "No rest until he's satisfied on that."

Howald subsequently received a call from decedent, who was concerned about the fact that her two dogs were not covered in the documents he had prepared for her. Howald drafted a second amendment to the revocable living trust adding provisions for the care of the dogs and sent this to decedent, accompanied by an October 9, 1992, cover letter. Receiving no response, Howald sent Johnson and Doyen a letter dated October 19, 1992, explaining he had drafted a second amendment and requesting more information as to how to handle the dogs in the trust. The second amendment to the trust was never executed by decedent.

Decedent died on March 12, 1993. Howald contacted both Johnson and Doyen with respect to the administration of the estate. Johnson, an accountant, was in the midst of tax season and unable to immediately participate in the estate, but stated he would get the new will to Howald. However, he never did so, leading Howald to send him an application for letters testamentary (already signed by Doyen) along with a March 29, 1993, letter indicating he was awaiting receipt of the will from Johnson. On April 29, Johnson and Howald met to discuss the will, where Johnson asked Howald, "What if Emma signed an affidavit destroying her will?" According to Howald, Johnson was "very vague" on the status of the will, but did not say it was revoked. Johnson never produced the September 21, 1992, will. A petition to compel production of the will was filed and a hearing held on July 8, 1993, where Johnson testified to destroying the will.

Mary Lee Doyen testified to the following at trial. In August of 1992, decedent told her she wanted to make some changes to her will, and specifically mentioned giving the

Graham building to Doyen "because it goes with ... Mueller Electric." Some time later, decedent told Doyen she had called Johnson and informed him of the changes she was going to make to the will, which prompted Johnson to come see her and tell her he did not want her to give the Graham building to Doyen because it "was his only connection to DeSoto."

Decedent subsequently showed Doyen a document dated October 20, 1992, addressed to Howald, and purportedly typed by decedent, which stated, "This letter is to tell you that I have just read a copy of the revised amendment that you sent to me last week[,]" and requested the following change, among others, to the will: "My beloved dogs, ... to Gary Johnson for their care and custody, together with my stocks (Walgreens & PPG) and my savings account at State Bank of Desoto [sic]." This document was found by decedent in an envelope from the law firm of Thurman, Howald, Weber, Bowles & Senkel, postmarked October 16, 1992. Decedent claimed Johnson put the above document in this envelope, and told Doyen, "I didn't say that. I didn't say these things[,]" and "He's putting words in my mouth." Decedent never showed Doyen the proposed second amendment to the trust nor Howald's October 9, 1992, letter, and in fact Doyen was unaware of those documents until her attorneys obtained Howald's file.

Gary Johnson testified to the following at trial. Johnson acknowledged receiving both the original September 21, 1992, will and the amendment to the trust, but denied knowing beforehand that decedent planned to change the will and trust. However, he averred on cross-examination that he had told decedent prior to September 21, 1992, not to give Doyen the Graham building. Johnson further agreed he destroyed the original 1992 will, but stated he did so at decedent's request and in her presence because decedent wanted the August 30, 1989, will to be back in effect. Johnson also admitted to subsequently telling decedent he was upset with the changes made to the will and trust on September 21, 1992, and admitted he was upset because his share of the estate would be diminished. Johnson further admitted he

typed the document purporting to give him decedent's Walgreen's stock, but denied replacing the second amendment to the trust drafted by Howald with this document.

On August 24, 1995, the trial court entered findings of fact and conclusions of law. The court found, *inter alia,* that decedent executed an amendment to her revocable living trust on September 21, 1992, a copy of which was delivered to Johnson; Johnson breached his fiduciary duty by attempting to benefit himself over other beneficiaries; Johnson had attempted to amend the trust against the intentions of decedent; and, Johnson provided no accounting for his duties as trustee. The court concluded as a matter of law that although Johnson had destroyed the September 21, 1992, will, it was not decedent's intention to revoke that will and it would be given effect. The court further concluded:

> [Decedent] executed a Living Trust dated August 30, 1989 and properly amended the Living Trust on September 21, 1992. The Amendment to the Living Trust was effective upon execution by [decedent] on September 21, 1992. The Living Trust was delivered to Gary Johnson, Trustee, as provided in the trust, and Mr. Johnson refuses to sign as Trustee. Gary Johnson has breached his fiduciary duty as Trustee. Pursuant to [RSMo § ] 456.190, this Court hereby removes Gary Johnson as Trustee and appoints Mary Lee Doyen as successor Trustee and finds that the Revocable Living Trust Agreement as amended on September 21, 1992 shall be given full force and effect....

The court also held that Johnson was not entitled to any fees as trustee. This appeal followed.

Johnson raises three points on appeal. At issue in Johnson's first point is the validity of the purported September 21, 1992, amendment to decedent's August 30, 1989, revocable living trust. Johnson contends that because he never executed the amendment as required under the terms of the trust, the trust was never properly amended and should have been administered in accordance with the terms of the original August 30, 1989, trust.

Where instructions in a trust instrument are clear and unambiguous, the intent of the grantor at the time of the creation of the trust governs and subsequent modifications to the trust are effective only in the manner expressed in the trust instrument under a reserved power to amend. *Love v. St. Louis Union Trust Company,* 497 S.W.2d 154, 159 (Mo.banc 1973). "If the settlor reserves a power to modify the trust only in a particular manner or under particular circumstances, he can modify the trust only in that manner or under those circumstances." Restatement of Trusts 2d, § 331(1), Comment d (1959). For example, where the reservation of power to alter, amend, or revoke a trust agreement requires that written notice be given to the trustees during the life of the grantor, the trust cannot be altered, amended or revoked by means of the grantor's will. *See Love,* 497 S.W.2d at 159. However, an exception to this general rule is recognized. A grantor need not adhere to a provision requiring written notice of revocation to the trustee, if the trustee voluntarily waives his or her right to notice by discovering the revocation and acquiescing to it; such a provision is deemed solely for the trustee's benefit. *St. Louis Union Trust Co. v. Dudley,* 162 S.W.2d 290, 293 (Mo.App.St.L.1942). *But see Maple Tree Investments, Inc. v. Port,* 821 S.W.2d 562, 564 (Mo.App. W.D.1991) (even if notice requirement waived, other requirements for revoking trust must be satisfied).

Here, Section IX(c) of decedent's living trust reserved to decedent the power to amend, alter or modify the trust "by instrument in writing executed by Grantor and delivered to *and executed by the Trustee,* ...." (emphasis added.) Johnson distinguishes this provision from Section IX(a) (revocation of trust) and Section IX(b) (withdrawal of principal from trust estate), neither of which required execution by the trustee. Johnson argues Section IX(c)'s requirement of execution by the trustee was not merely ministerial, and must have been complied with before an amendment could be given effect. Johnson further points out he was never asked to execute the amendment, the amendment itself did not provide for execution by the trustee (i.e., there was no line for the trustee's signature), and this was the result of a conscious decision on Howald's part. Therefore, Johnson asserts, the September 21, 1992, amendment was a nullity.

We disagree. Under the circumstances here, Johnson's failure to execute the amendment did not defeat its validity. First, we presume Johnson, as trustee, was familiar with the trust's terms. There is no indication in the record that Johnson was unaware of the requirement that the trustee execute amendments to the trust, regardless of what John Howald did or did not tell him. Further, the execution requirement of Section IX(c) was for the sole benefit of the trustee. Unlike Section VI, which required that the trustee consent to additions to the trust estate which increased the trustee's responsibilities, Section IX(c) did not grant the trustee the power to veto modifications of the trust's terms. Johnson's discretionary powers as trustee did not apply to the power decedent reserved to herself to amend, alter and modify the trust. Whether Johnson approved of an amendment or not, he was powerless to withhold execution of the amendment. Finally, Johnson was fully aware of the changes made pursuant to the September 21, 1992, amendment, and, in fact, complained of them, lending credence to the trial court's finding that he refused to execute the amendment. The court did not err in finding the amendment effective upon its execution by decedent. Point denied.

For his second point on appeal, Johnson contends the trial court erred in allowing in Doyen's testimony that decedent told her, "He's putting words in my mouth." Johnson also complains of the testimony of Margaret Burt, a longtime friend of decedent, who testified decedent told her that Johnson "put words in her mouth about the will[;]" Mary Jane Lewis, a neighbor of decedent, who testified decedent told her "she trusted Mary Lee [Doyen] and wanted Mary Lee all the time[;]" and Ken Sutton, a DeSoto resident who knew decedent and Doyen, who testified decedent's "nickname for Gary Johnson to me was 'the old fool.'" Johnson argues these statements were inadmissible under RSMo § 491.010.2, which states in part:

In any such suit, proceeding or probate matter, where one of the parties to the contract, transaction, occurrence or cause of action, ... is dead ..., and the adverse party or his agent testifies with respect thereto, then any relevant statement or statements made by the deceased party ..., shall not be excluded as hearsay,....

According to Johnson, the above statements were inadmissible because he, the "adverse party," had not yet testified with regard to decedent.

■ We note at the outset that Johnson's only objection at trial to the above testimony was on hearsay grounds, lodged at the outset of each witness' testimony in the form of a continuing objection. Johnson's contention that these statements were inadmissible under RSMo § 491.010.2 was never presented to the trial court. "A party may not advance on appeal an objection to evidence different from the one presented to the trial court." *Frank v. Environmental Sanitation Management*, 687 S.W.2d 876, 884 (Mo.banc 1985).

■ Had Johnson's contention on appeal been preserved, however, it would still fail, because the above statements were not, in fact, hearsay. RSMo § 491.010.2 allows certain evidence otherwise inadmissible under the hearsay rule to be received, if the opposing party voluntarily testifies about his or her dealings with the deceased party. *Estate of Oden v. Oden*, 905 S.W.2d 914, 918 (Mo. App. E.D.1995). The statute, however, does not require the exclusion of evidence otherwise admissible. *Id.* Thus, RSMo § 491.010.2 does not apply to testimony that is not hearsay. *Barnes v. Prudential Ins. Co.*, 76 F.3d 889, 892 (8th Cir.1996). The statements of decedent referred to above were offered not for the truth of the matter asserted, but to show decedent's attitude towards Johnson and Doyen. As such, the statements were not hearsay and RSMo § 491.010.2 did not apply. Point denied.

■ For his final point on appeal, Johnson asserts the trial court erred in holding he was not entitled to any fees as trustee, as there was no evidence he breached his fiduciary duty in administering the trust. We disagree. The facts set out above support a finding that Johnson attempted to benefit himself over other beneficiaries and attempted to amend the trust against the intentions of decedent. "If a trustee commits a breach of trust, the court may, in its discretion, deny him all compensation or allow a reduced amount." *Penrod v. Henry*, 706 S.W.2d 537, 541 (Mo.App. S.D.1986). We see no abuse of discretion in the court's denial of fees. Point denied.[1]

The judgment of the trial court is affirmed.

DOWD, P.J., and REINHARD, J., concur.

---

1. At oral argument, Johnson contended no evidence of his entitlement to fees was offered because the issue of fees was not referred to in the pleadings and was not part of the original case. However, this contention is not addressed any-where in Johnson's brief. Issues not developed in the argument portion of a party's brief are not preserved for appellate review and need not be addressed. *See Krame v. Waller*, 849 S.W.2d 236, 239 (Mo.App. E.D.1993).