In the Matter of THOMAS
L. HARRIS TRUST.

UMB Bank, N.A., as Successor Trustee
of the Thomas L. Harris Revocable
Trust, Respondent,

v.

Maxine Bryan Harris, Respondent,

and

Barbara Jean Harris Meixsell and
Darlene Linda Harris Baker,
Respondents,

and

Sandra Dorene Harris Underhill and
Carol Ann Harris Burke,
Appellants.

No. 27440.

Missouri Court of Appeals,
Southern District,
Division Two.

Sept. 8, 2006.

Motion for Rehearing or Transfer
Denied Oct. 2, 2006.

Application for Transfer Denied
Nov. 21, 2006.

Kevin Checkett, Checkett & Pauly, P.C., Carthage, for appellants.

James B. Fleischaker, Fleischaker & Williams, L.C., Joplin, for respondent.

ROBERT S. BARNEY, Judge.

Carol Ann Harris Burke ("Ms. Burke") and Sandra Dorene Harris Underhill ("Ms. Underhill") (collectively "Appellants") appeal from a judgment entered by the Probate Division of the Circuit Court of Jasper County ("the probate court"). In its judgment, the probate court determined the rights of the parties under the Thomas L. Harris Revocable Trust ("the Trust"), subsequent to a petition for declaratory relief to construe the Trust filed by Successor Trustee UMB Bank, N.A. ("Trustee").[1] Appellants allege one point of probate court error.

The record reveals the Trust was created by Decedent on April 20, 1994. Among other things, the Trust originally provided for the management and distribution of Decedent's property, and also established separate shares for Decedent's daughters and Wife upon Decedent's death.

Specifically, the Trust set out in Article I that:

> [Decedent] may by written instrument, signed, acknowledged and delivered to the Trustee during [Decedent's] life, revoke this instrument in whole or in part and amend it from time to time in any respect, *except the provisions herein for the benefit of [Wife] may be amended or revoked only with her signed consent*

---

1. Appellants, Barbara Jean Harris Meixsell ("Ms. Meixsell") and Darlene Linda Harris ("Ms. Harris") together with Maxine Bryan Harris ("Wife"), were named as defendants in Trustee's petition to construe the Trust. As explained more fully below, Wife was married to Thomas L. Harris ("Decedent") at the time of his death. Appellants, Ms. Meixsell, and Ms. Harris were Decedent's daughters from a previous marriage.

Trustee, Ms. Meixsell and Ms. Harris did not participate in this appeal.

*thereto,* unless a decree of dissolution or legal separation of the parties' marriage is entered, or [Wife] shall predecease [Decedent].

(Emphasis added.)

Around the same time as the creation of the Trust, on April 26, 1994, Wife and Decedent entered into an antenuptial agreement. The antenuptial agreement provided, *inter alia,* that

[Decedent] has created [the Trust], which has certain provisions therein to [Wife]. [Decedent] retains the right to revoke, amend, modify, transfer property to the trust, or remove property from the trust, free from any claim of [Wife] except as provided herein. By execution of this [Antenuptial] Agreement, [Wife] waives the right to attack, take against or otherwise contest the dispositive provisions of the Trust, as may be amended from time to time. However, said Trust, and any amendments thereto shall provide that [Wife] take, upon said death of [Decedent], if she survives him, a one fifth (1/5) share of said Trust, and such provision may not be revoked or amended, without the consent, in writing of [Wife], unless a decree of dissolution or legal separation was entered.

On April 11, 1997, Decedent amended the Trust to reflect his desire that Wife be "entitle[d] to reside in the parties' marital home for her natural life or to and until [Wife] shall remarry or shall cohabitate in said home with a person of the opposite sex for a continuous period of time of at least 90 days."

Per Article I of the Trust, Wife signed this first amendment to the Trust as "accepted and approved" and the language "[Wife] consents to such amendment" was included in the body of the trust amendment.

On December 19, 1997, Decedent executed the "Second Amendment to the Thomas L. Harris Revocable Trust Agreement" ("the Second Amendment"). The Second Amendment appointed UMB Bank, N.A., as a successor trustee to Decedent in the event that Decedent should "die, resign or be unable to serve as Trustee...." The Second Amendment was also signed as "accepted and approved" by Wife per Article I of the Trust.

On April 1, 2004, Decedent amended the trust for a third time ("the Third Amendment"). The Third Amendment revoked prior "paragraphs 2, 3, and 4 of Article III ... in their entirety ..." [2] and substituted new provisions "as if the same had originally been incorporated therein...." The new provisions of Article III set out:

2. All of the rest, residue and remainder of the trust estate shall be distributed to [Wife], per stirpes.

3. In the event any distributee under this Amendment or any prior Amendment to the trust or the trust itself shall contest or otherwise dispute the validity of the trust or any provisions thereof; then in the event such contest is suc-

---

**2.** The prior version of Article III stated:
2. All the rest, residue, and remainder of the trust estate shall be distributed in equal shares, free from trust, one such share for each child of [Decedent] ... and one share to [Wife].
3. In the event any child of [Decedent] shall predecease [Decedent], such child's share shall pass to his heirs per stirpes, or if there be none, then divided evenly between his brothers and sisters, per stirpes.

4. In the event the marriage of [Wife] and [Decedent] shall have been dissolved by an entry of a Decree of Dissolution of Marriage, or in the event a decree of legal separation shall have been entered, or in the event [Wife] shall fail to survive [Decedent], then the share of [Wife] shall be distributed equally amongst the children of [Decedent] pursuant to the provisions of Article III, paragraphs 2 and 3.

cessful, in lieu of all distributions that said individual would receive hereunder or thereunder, [Decedent] states that it is his desire that such individual shall receive the sum of Ten and No/100 ($10.00) Dollars.

The record reveals the Third Amendment contained no commensurate notation by Wife that the Third Amendment was "accepted and approved" prior to Decedent passing away in June of 2004.[3]

Trustee registered the Trust with the probate court on February 25, 2005. On that same date, Trustee also filed its petition for declaratory relief. The petition set out that "[t]here is a justiciable controversy concerning the construction of the Trust and the person or persons to which [Trustee] should be distributing assets of the Trust estate." In requesting relief, the petition stated the issue before the probate court was "whether the Third Amendment was an effective and enforceable amendment of the Trust in light of the provisions of Article I of the Trust and the lack of [Wife's] signature on the Third Amendment."

In her answer to Trustee's petition, Wife asserted it was clear from the Trust that Decedent's intent was that she only had to give her consent to amendments when benefits were being taken away from her and not when, as in the Third Amendment, her benefits were being increased. Wife maintained the Third Amendment should have been validated by the probate court and that "the residue and remainder of the Trust estate should be distributed to her, per stirpes, pursuant to the Third Amendment...."

In her answer to the petition, Ms. Burke asserted the Third Amendment was not a valid amendment to the Trust because it was not signed by Wife; accordingly, she maintained the residue and remainder of the Trust should be distributed per the terms of the Second Amendment to the Trust.[4]

On November 9, 2005, a hearing was held by the probate court at which the parties "stipulated as to the facts" as previously outlined.[5] Following oral argument from both sides, the probate court found that:

> inasmuch as the [Third Amendment] was for the benefit of [Wife] the court finds her consent [to the Third Amendment] was not necessary because [Decedent], by inference, retained the right to add benefits.... In addition, the court finds the condition requiring written consent was waived because the provision [added by the Third Amendment] was solely for the benefit of [Wife].

This appeal followed.

 In this court-tried case, our review is governed by the principles articulated in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). *A.G. Edwards Trust Co. v. Miller*, 59 S.W.3d 550, 552 (Mo.App. 2001). Accordingly, the judgment of the probate court will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy*, 536 S.W.2d at 32. "In a case

---

3. Wife's undated "Consent to Trust Amendment" was filed with the probate court on August 4, 2005, after the commencement of litigation.

4. Ms. Meixsell, Ms. Harris and Ms. Underhill did not file responsive pleadings in this matter.

5. While a transcript of the probate court hearing exists, it contains no sworn testimony of the parties.

tried on stipulation of facts, the only issue on appeal is whether the [probate] court drew the proper legal conclusions from the stipulated facts." *A.G. Edwards Trust Co.*, 59 S.W.3d at 552.

In their sole point on appeal, Appellants maintain the probate court erred "in its interpretation and application of the [T]hird [A]mendment . . ." and in its declaration that Wife was not required to sign the Third Amendment. Appellants contend "there can be no waiver or other interpretation of the [T]rust mandate in that Article I . . . unambiguously mandates that no amendment would be valid unless accompanied by [Wife's] signed consent."

■■■■ In interpreting provisions of a trust, as in a will, the words used are given "their usual, ordinary and natural meaning unless there is something in the instrument[ ] to deflect from that meaning." *Lehr v. Collier*, 909 S.W.2d 717, 723 (Mo. App.1995). In determining the meaning of a trust provision under Missouri law, the paramount rule of construction is that the intent of the person who created the trust is controlling, and that such intention must be ascertained primarily from the trust instrument as a whole. *Boatmen's Trust Co. v. Sugden*, 827 S.W.2d 249, 253 (Mo. App.1992). As such, "[w]here instructions in a trust instrument are clear and unambiguous, the intent of the grantor at the time of the creation of the trust governs and subsequent modifications to the trust are effective only in the manner expressed in the trust instrument under a reserved power to amend." *In re Estate of Mueller*, 933 S.W.2d 903, 907 (Mo.App.1996). " 'If the [grantor] reserves a power to modify the trust only in a *particular manner or under particular circumstances*, he can modify the trust only in that manner or under those circumstances.' " *Id.* (quoting Restatement (Second) of Trusts § 331(1) cmt. a (1959)) (emphasis added).

■■■ In the present matter, the Trust specified that Decedent could "revoke [the Trust] in whole or in part and amend it from time to time in any respect, except the provisions [of the Trust] *for the benefit of [Wife] may be amended or revoked only with her signed consent thereto* . . . ." (Emphasis added.)

As stated previously, the Third Amendment *revoked* prior "paragraphs 2, 3, and 4 of Article III . . . in their entirety . . ." The revoked paragraphs, among other things, had divided the residue and remainder of the Trust estate equally among Decedent's daughters and Wife. The new paragraphs contained in the Third Amendment to the Trust gave the entirety of "the rest, residue and remainder of the [T]rust estate . . . to [Wife], per stirpes." It is our view that under the "usual, ordinary and natural meaning . . ." of the language in the Trust, *In re Estate of Mueller*, 933 S.W.2d at 907, it was Decedent's intent that the Third Amendment to the Trust *revoked* a prior grant to Wife and *amended* the Trust to give Wife a greater share of the Trust estate.

Wife asserts "[i]t is obvious that the provision requiring her consent was inserted solely for her benefit and could therefore be waived by her . . . ." In support of this proposition, Wife relies on *St. Louis Union Trust Co. v. Dudley*, 162 S.W.2d 290, 293 (Mo.App.1942) (holding that a "provision for written notice to the *trustee*, being solely designed for the *trustee's* benefit, may be waived by him . . . and when so voluntarily waived, a valid revocation is no less effectually accomplished than if written notice had been given in strict compliance with the letter of the instrument") (emphasis added). Wife also relies on *In re Estate of Mueller*, 933 S.W.2d at 907–8 (holding that "[a] grantor need not adhere to a provision requiring written *notice of revocation* [of a distribution pro-

vision of a trust] to the *trustee,* if the *trustee* voluntarily waives his or her right to notice by discovering the revocation and acquiescing to it; such a provision is deemed solely for the *trustee's* benefit") (emphasis added). However, these cases are factually distinguishable from the instant case. First, Wife is not a trustee of the Trust. Additionally, the cited cases do not involve waivers by beneficiaries to express provisions mandated by a trust or will.[6]

Wife also maintains the Trust "explicitly states that [an] amendment must be by written instrument, signed, acknowledged and delivered to the Trustee during [Decedent's] life, it does not state that [Wife's] signed consent must be contained in the same instrument or that it must be executed contemporaneously with the amendment or that it must be executed during [Decedent's] life time." According to Wife, her consent, even though it occurred after the death of Decedent, was valid and operative because there was no requirement in the Trust that she consent during Decedent's lifetime.

■■■ It is true that there are no requirements in the Trust which detail how or when *Wife* is to exercise the consent provision. Saliently, however, the Trust, itself, provides at Article III, that "after [Decedent's] death, the *[T]rust shall terminate, and the balance of the [T]rust estate shall be distributed. . . .* " (Emphasis added.) The Trust terminated upon Decedent's death in June of 2004. As a general rule, a "trustee has no authority to act

after the termination of a trust, other than to wind up its affairs." *In re Estate of Holscher,* 724 S.W.2d 577, 582 (Mo.App. 1986). "Generally, a trust terminates when the trustee gives a final accounting and conveys the trust property to the beneficiaries." *Shannon v. Johnson,* 741 S.W.2d 791, 794 (Mo.App.1987). "Once the trust terminates, the legal title, which was vested in the trustee, then vests in the equitable title holder, the two titles merge, and the equitable title holder becomes the owner of a full fee interest." *Mercantile Trust Co., N.A. v. Hardie,* 39 S.W.3d 907, 913 (Mo.App.2001). "The trustee must act within a reasonable time of the termination date if one is specified in the trust instrument." *Shannon,* 741 S.W.2d at 794.

In the present matter, Decedent included a provision in the Trust which required Wife's consent to any revocations or amendments affecting her distribution under the terms of the Trust. Wife specifically consented to the two, prior amendments to the Trust—one of which directly increased her benefits by allowing her to remain in the marital home; and the other which named a successor trustee. The Third Amendment specifically revoked a provision relating to her distribution and amended the Trust so as to affect the distribution of property to Wife. Wife's consent was required to validate the Third Amendment made by Decedent. *In re Estate of Mueller,* 933 S.W.2d at 907; *Lehr,* 909 S.W.2d at 723. By implication, Wife's consent also had to have been executed prior to the termination of the Trust

---

**6.** We are aware that this Court held in *In re Estate of Campbell* " 'that acceptance will be presumed when the gift is entirely beneficial to the donee unless the contrary appears.' " *In re Estate of Campbell,* 939 S.W.2d 558, 564 (Mo.App.1997) (quoting *Firestone v. Yoffie,* 494 S.W.2d 394, 400 (Mo.App.1973)). However, the issue in Campbell was the validity of the decedent's *inter vivos* gift of a promissory

note to his daughter which precluded the note from being considered as an asset of his estate. *Id.* Accordingly, in *Campbell* there was no written instrument governing the *inter vivos* gift. *Id.* As such, there was no issue in *Campbell* relating to the decedent's reservation of power to modify a trust instrument in a particular manner as was the case in the instant matter under review.

because Decedent set out that the Trust would terminate upon his death. *See Holscher*, 724 S.W.2d at 582; *Shannon*, 741 S.W.2d at 794.

The probate court erroneously declared or applied the law in finding Wife's consent to the Third Amendment "was not necessary...." *Murphy*, 536 S.W.2d at 32. The probate court also erred in finding that "the condition requiring written consent was waived because the provision [added by the Third Amendment] was solely for the benefit of [Wife]." We reverse the judgment and remand the matter to the probate court for entry of a judgment consistent with this opinion.

BATES, C.J., and LYNCH, J., concur.